## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

WILLIAM GIBBONS,

                Plaintiff,

      -against-

LEONARD FRONTON, D.O., STEVEN FEIN, M.D., STERLING MEDICAL CORPORATION, DEPARTMENT OF VETERANS AFFAIRS and THE UNITED STATES OF AMERICA,

                Defendant.

Case No.: 07-CV-2801 (MGC)

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION AND MEMORANDUM OF LAW SUBMITTED BY DEFENDANTS THE UNITED STATES OF AMERICA AND THE DEPARTMENT OF VETERANS AFFAIRS' SEEKING TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

SHERRI L. PLOTKIN
**BARTON, BARTON & PLOTKIN, LLP**
*Attorneys for Plaintiff*
420 Lexington Avenue
New York, New York 10170
Tel. (212) 687-6262
Fax (212) 697-3043

September 18, 2007

### *TABLE OF CONTENTS*

TABLE OF AUTHORITIES .......................................................................Page i
PRELIMINARY STATEMENT ................................................................Page 1

STATEMENT OF FACTS:
1.  Outstanding Discovery...................................................................Page 3
2.  Plaintiff's Allegations ...................................................................Page 4
3.  Plaintiff's Medical Treatment .......................................................Page 5

ARGUMENT:

POINT I:    DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE
            PLAINTIFF'S COMPLAINT UNDER F.R.C.P.12(b)(1) FOR LACK
            OF SUBJECT MATTER JURISDICTION AS A MATTER OF LAW

A.  Legal Standard for Motion to Dismiss Under
    Rule 12(b)(1)...............................................................................Page 8

B.  Independent Contractor Standard For Purposes Of
    The FTCA. ...................................................................................Page 9

C.  Contract Defining "Employment Status" is
    Not Controlling.............................................................................Page 14

D.  Contract Assigning Non-Governmental Entity to
    Pay Salary is Not Controlling. .....................................................Page 15

E.  Contract Assigning Non-Governmental Entity to
    Pay Malpractice Insurance is Not Controlling...............................Page 16

POINT II:   DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE
            PLAINTIFF'S COMPLAINT BECAUSE THE CONTRACT EVINCES
            AN EMPLOYER-EMPLOYEE RELATIONSHIP BETWEEN DR.
            FRONTON & DR. FINE AND THE VA

A.  VA Controls CBOC Physicians' "Day-to-Day"
    Performance of Their Primary Care Duties ...................................Page 18

B.  VA Controls CBOC Physicians' "Day-to-Day"
    Performance of Their Preventative Care Duties ............................Page 20

C.  VA Controls Patient Records and Record Keeping
    by CBOC Physicians.....................................................................Page 22

D.  VA Controls CBOC Physicians' Patients. .................................................................Page 24

E.  VA Prescribes Clinical Guidelines for CBOC Physicians.......................................Page 26

F.  VA Monitors and Evaluates CBOC Physicians' Work. ...........................................Page 27

G.  VA Reviews and Approves Personnel ......................................................................Page 28

POINT III:    DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF
              PLAINTIFF'S COMPLAINT BECAUSE THE VA WAS NEGLIGENT
              IN THE HIRING AND SUPERVISION OF CBOC PHYSICIANS ......Page 28


POINT IV:    DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF
             PLAINTIFF'S COMPLAINT AGAINST THE BRONX VA UNDER
             12(b)(6) FOR FAILURE TO STATE A CLAIM ...................................Page 35

POINT V:     DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF
             PLAINTIFF'S COMPLAINT UNDER F.R.C.P. 12(b)(1) AND 12(b)(6)
             BECAUSE IT IS PREMATURE TO DISMISS AN ACTION WHERE
             SUBSTANTIAL DISCOVERY IS REQUIRED....................................Page 37

CONCLUSION....................................................................................................................Page 39

## *TABLE OF AUTHORITIES*

Bernheim v. Litt
79 F.3d 318, 321 (2d Cir. 1996)................................................................Page 29

Bravo v. United States
403 F. Supp.2d 1182 (11th Cir., 2005) ...................................................Page 15

Conley v. Gibson
355 U.S. 41 (1957)................................................................................Pages 8, 29,
                                                                                                35

Conrac Corp. v. American Telephone & Telegraph Co.
546 F. Supp. 429 (S.D.N.Y. Aug. 31, 1982)..........................................Page 7, 38

Costa v. United States
845 F. Supp. 64 (D.R.I. 1994)................................................................Pages 25, 27

Cuker v. Hillsborough County Hosp. Auth.
605 So. 2d 998 (Fla. 2d DCA 1992) .....................................................Pages 32

Dubai Islamic Bank v. Citibank, N.A.
126 F. Supp. 2d 659 (S.D.N.Y. 2000)....................................................Page 34

Easton v. Sundram
947 F. 2d 1011 (2d Cir. 1991)................................................................Page 35

EEOC v. Staten Island Sav. Bank
207 F.3d 144 (2d Cir. 2000)...................................................................Page 29

Ezekiel v. Michel
66 F.3d 894 (7th Cir. 1995) ...................................................................Page 16

Ferro v. Railway Express Agency, Inc.
296 F.2d 847 (2d Cir. 1961)...................................................................Page 35-36

Garcia v. Duffy
492 So. 2d 435 (Fla. 2d DCA 1986) ......................................................Page 29

Geisler v. Petrocelli
616 F.2d 636 (2d Cir. 1980)...................................................................Page 29

GTFM Inc. v. Int'l Basic Source, Inc.
2002 U.S. Dis. LEXIS 345 (S.D.N.Y. 2002) .........................................Page 34

K.M. ex rel. D.M. v. Publix Super Mkts., Inc.
895 So. 2d 732 (Fla. 1989)........................................................................Page 31

Kaisner v. Kolb
543 So. 2d 732 (Fla. 1989)........................................................................Page 31

Leone v. United States
910 F.2d 46 (2d Cir. 1990).......................................................Pages 10-11,
                                                                          16, 19-20
Lilly v. Fieldstone
876 F. 2d 857 (10th Cir. 1989) ..............................................Pages 10, 25

Linkous v. United Status
142 F.3d 271 (5th Cir. 1998) ....................................................Page 18

Logue v. United States
412 U.S. 521 (1973)...................................................................Pages 10

Lunney v. United States
319 F.3d 550 (2d Cir. 2003)......................................................Page 8

Makarova v. United States
201 F.3d 110 (2d Cir. 2000).......................................................Page 8

Malicki v. Doe
814 So.2d 347 (Fla. 2002)..........................................................Page 32

Mallory v. O'Neil
69 So.2d 313 (Fla. 1954)............................................................Page 31

Maule Industries v. Messana
62 So.2d 737 (Fla. 1953).............................................................Page 31-32

Metrokane, Inc. v. Wine Enthusiast
160 F. Supp.2d 633 (S.D.N.Y. 2001)..........................................Page 34

McCain v. Florida Power Corp.
593 So.2d 500 (Fla. 1992)...........................................................Page 28

Moreno v. United States
965 F.Supp 521 (S.D.N.Y. 1997) ...............................................Page 11

Mortensen v. First Savings and Loan Association
549 F.2d 884 (3d Cir. 1977).........................................................Pages 8

Mytych v. May Dep't. Stores Co.
34 F. Supp.2d 130 (D. Conn. 1999)..............................................................Page 9

Norman v. United States
111 F. 3d 356 (3d Cir. 1997)........................................................................Page 11

Orlando Regional Medical Center, Inc. v. Chmielewski
573 So.2d 876 (Fla. 5th DCA 1991)............................................................Pages 32

Peairs v. Florida Publishing Co.
132 So.2d 561 (Fla. 1st DCA 1961) ...........................................................Page 32

Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp.
711 F.2d 989 (11th Cir. 1983) ...................................................................Page 30

Richards v. United States
369 U.S. 1 (1962)........................................................................................Page 30

Robinson v. Overseas Military Sales Corp.
827 F. Supp. 915 (E.D.N.Y. 1993)
aff'd, 21 F.3d 502 (2d Cir. 1994) ................................................................Page 14

Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.
748 F.2d 774 (2d Cir. 1984)........................................................................Page 7

Scheuer v. Rhodes
416 U.S. 232 (1974)..................................................................................Pages 29, 35

Shurben v. Dollar Rent-A-Car
676 So. 2d 467 (Fla Dist. Ct. App. 1996) ...................................................Page 31

Stephens v. Dept. of Health & Human Servs.
901 F.2d, 1571 (11th Cir. 1990) ...............................................................Page 9

Streit v. Bushnell
424 F. Supp.2d 633 (S.D.N.Y. Mar. 23, 2006)...........................................Page 34,
                                                                                                          36-38

Still v. DeBuono
101 F.3d 888 (2d Cir. 1996).......................................................................Page 33

Tallahassee Furniture Co., Inc. v. Harrison
583 So. 2d 744 (Fla. 1st DCA 1991),
Rev. denied, 595 So. 2d 558 (Fla, 1992) ....................................................Page 31

Taracido v. United States
1995 U.S. Dist LEXIS 4661 (S.D.N.Y Apr. 10, 1995)....................................................Pages 11-12
14-15, 17,
22-23

Tivol v. United States No.
1996 U.S. Dist. LEXIS 22317 (S.D.N.Y. Sept. 27, 1996)
*aff'd,* 164 F.3d 619 (2d Cir. 1998) ...........................................................................Page 12

United States v. Orleans
425 U.S. 807 (1976)...................................................................................................Page 10

United States v. Yale New Haven Hosp.
727 F.Supp. 784 (D. Conn. 1990)...............................................................................Pages 9, 35

U.S. Fidelity & Guar. V. Toward
734 F. Supp. 465 (S.D. Fla. 1990) ..............................................................................Page 28

Warren v. Hudson Pulp & Paper Corp.
477 F.2d 229 (2d Cir. 1973)........................................................................................Page 32

Williams v. United States
50 F.3d 299 (4th Cir. 1995) .........................................................................................Page 11

Williams v. United States
2007 U.S. Dist. LEXIS 25240 (S.D.N.Y. 2007)..........................................................Pages 11-17
21-22,
26, 28

Witt v. United States
 462 F.2d 1261 (2d Cir. 1973)......................................................................................Page 14

Wright v. United States
537 F. Supp. 568 (ND III)............................................................................................Page 14

Plaintiff WILLIAM GIBBONS respectfully submits this memorandum of law in opposition to the motion and memorandum of law submitted by Defendants the United States of America (hereinafter "USA") and the Department of Veteran's Affairs (hereinafter "VA") seeking to dismiss the Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

The Defendants exercised significant and extensive control and supervision over the duties, responsibilities and activities of the co-defendants LEONARD FRONTON, D.O. (hereinafter "Dr. Fronton") and STEVEN FEIN, M.D. (hereinafter "Dr. Fine"; incorrectly named in caption as "Dr. Fein"). Therefore, both Dr. Fronton and Dr. Fine must be deemed employees of Defendants USA and VA and as such, Defendants USA and VA are vicariously responsible for the negligent acts and omissions of co-defendants Dr. Fronton and Dr. Fine.

Defendants argue that the Miami VA did not exercise sufficient control over Dr. Fronton and Dr. Fine to render these doctors "employees" of the Miami VA. However, Defendants ignore numerous contract provisions that demonstrate the significant and extensive degree of control and supervision the VA exercised over these physicians. Thus, Defendants cannot establish as a matter of law that Dr. Fronton and Dr. Fine were independent contractors for purposes of the FTCA.

In support of their motion, Defendants rely heavily on contractual terms that define "conditions of employment" and label the contracting physicians "independent contractors."

Yet these contract terms are not controlling in distinguishing employees from independent contractors for purposes of the FTCA. Contractual terms that define the workers' duties typically provide the most probative evidence for determining whether an employee-employer relationship exists. Specifically, the court looks to (1) the power of the federal government to <u>control the detailed physical performance</u> of the contractor and (2) whether the federal government <u>supervises the day-to-day operations</u> of the contractor.

Pursuant to the terms of the contract, the VA controlled, supervised and directed nearly every aspect of the primary and preventative care provided by CBOC (community-based outpatient clinics)[1] physicians like Dr. Fronton and Dr. Fine including, but not limited to:

VA Control Over the Performance of Physicians' Primary Care Duties:

- Defining and limiting the scope of the physicians' work;
- Requiring all physicians to refer patients to the VA for emergency services, in-patient care, and specialist consultations;

VA Control Over the Performance of Physicians' Preventative Care Duties:

- Mandating all lab testing to be performed by and processed through the VA;
- Setting standards for patient screening and procedures for patient follow-up;

VA Control Over Physicians' Patients:

- Requiring physicians to see all VA enrolled patients;

---

[1] The Miami Department of Veterans Affairs ("VA") entered into a contract with Sterling Medical Corp. ("Sterling") on March 22, 2001 to provide primary/preventative medical care and continuity of care to veterans. A copy of the contract between the Miami VA and Sterling is annexed to Defendants' Malott Declaration, Exhibit "A." Sterling was authorized to oversee and manage the administration of three (3) community-based outpatient clinics ("CBOC's"), including the clinic located in the area of Deerfield Beach/Lighthouse Point ("Deerfield Beach VA CBOC"). *Id*. at 5. Defendants Dr. Fronton and Dr. Fine treated the Plaintiff at the Deerfield Beach VA CBOC from November 2001 up through and including September 2004.

- Maintaining all patient records in an electronic VA database and ensuring physician compliance;
- Retaining the exclusive right to determine eligibility for physician services;
- Supervising physicians' patient load and physician accessibility;

VA Control Over Clinical Guidelines, Policies and Procedures and Hiring Practices:

- Requiring all physicians to follow and comply with all VA Medical Staff By-Laws and all VA medical policies and procedures;
- Monitoring quality assurance for physicians' services;
- Requiring all operations be performed at VA owned facilities with VA equipment;
- Requiring VA review and approval of all contracting physicians

Thus, CBOC physicians like Dr. Fronton and Dr. Fine were deprived of the ability to exercise sufficient control over their "day-to-day" operations that would render them independent contractors for purposes of the FTCA and therefore, must be deemed employees of the defendants.

## STATEMENT OF FACTS

### A. Outstanding Discovery

To date Defendants have not provided Plaintiff with any discovery. The following discovery is currently outstanding:

VA Medical Records:

- A certified and complete copy of the Plaintiff's medical record from the Miami VA and Bronx VA;

- Billing records from the Miami VA and Bronx VA indicating all dates of treatment;

- Any and all pathology slides and re-cuts from the Miami VA and Bronx VA;

- Any and all radiology films and reports from the Miami VA and Bronx VA;

VA Clinical Guidelines for Primary and Preventative Healthcare:

- A copy of the VA guidelines for preventative screening to be followed by all CBOC physicians;

- A copy of the VA Medical Staff By-laws and VA Medical Center Memorandums pertaining to the delivery of services;

Contract-Related Discovery:

- A copy of the contract(s) between Sterling and Dr. Fronton and Dr. Fine for the years 2001, 2002, 2003, and 2004 detailing the terms and conditions of their employment and their relationship to Sterling and the Miami VA;

- A copy of the contract(s) between the Miami VA and Sterling for the years 2002, 2003, and 2004. Plaintiff has only been provided with a copy of the contract dated 2001;

Information Regarding the Deerfield Beach VA CBOC:

- Critical discovery to determine the applicability of the Consolidated Health Center Program under section 330 of the Public Health Service (PHS) Act (42 U.S.C. 254b), pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA") of 1992 and 1995, to the Deerfield Beach Community-Based Outpatient Clinic ("CBOC"). FSHCAA deemed that applicable Health Centers and their officers, directors, employees and contractors are Federal employees for claims and suits arising out of medical or related functions. *See* 42 U.S.C. §233(g) (1)(A).[2]

## B. Plaintiff's Allegations

This is an action to recover damages for serious and permanent injuries suffered by the Plaintiff arising out of Defendants' negligence and medical malpractice committed by the Miami VA from November 2001 up through and including September 2004 and the Bronx VA between January 2005 up through and including the present in failing to timely and properly diagnose and treat the Plaintiff's prostate cancer. As a consequence of the

---

[2] The limited discovery available to plaintiff, namely the "Contract", characterizes the Deerfield Beach Community-Based Outpatient Clinic where Defendants Dr. Fronton and Dr. Fine provided health services to eligible VA enrollees as a "Community-Based Primary Care Clinic." As such, section 330 of the Public Health Service (PHS) Act (42 U.S.C. 254b) for "Community Health Center" ("CHC") Programs, funded under section 330(e) and the FSHCAA, may be applicable to the Deerfield Beach CBOC at issue in the within action.

defendants' failure to timely and properly diagnose and treat the Plaintiff for the conditions from which he was suffering, the cancer was permitted to advance to a terminal condition by growing, spreading and invading into the margins and seminal vesicles requiring a radical prostatectomy, invasive surgery, and radiation therapy.  As a result of the Defendants' medical malpractice and negligence, Mr. Gibbons has suffered severe and permanent injuries, including, but not limited to, urinary incontinence, bladder neck restriction, frequent urinary tract infections, impotence, erectile dysfunction, increased risk of recurrence of cancer, and a significantly reduced life expectancy of only 2-5 years of life.  A copy of Plaintiff's complaint is annexed to Defendants' Penn Declaration as Exhibit "B".

## C. Plaintiff's Medical Treatment

Based on the incomplete records currently in Plaintiff's possession, Mr. Gibbons sought medical care from the Deerfield Beach VA community-based outpatient clinic ("Deerfield Beach VA CBOC") upon referral from the VA beginning in November of 2001. A copy of the Miami VA medical records in Plaintiff's possession is annexed to Plaintiff's Plotkin Declaration as Exhibit "A".

Defendant Dr. Fine first examined Mr. Gibbons during his annual physical held on November 21, 2001 at the Deerfield Beach VA CBOC.  As part of the routine physical, Dr. Fine ordered PSA testing along with other lab testing, but did not perform a rectal exam. Lab tests performed by the VA revealed that Mr. Gibbons' PSA was 5.52. This 5.52 PSA reading was noted in the lab results as "high" based on a normal PSA range of 0-4.  Dr. Fine did not instruct Mr. Gibbons to follow-up with the Deerfield Beach VA CBOC nor with a urologist or any other specialist, and/or the urology clinic, at the Miami VA Medical Center despite Mr. Gibbons' abnormal PSA results.

5

On September 10, 2002, Mr. Gibbons returned to the Deerfield Beach VA CBOC for another routine annual physical. Defendant Dr. Fronton ordered PSA testing to be performed by the VA. VA lab results revealed an increasingly higher PSA level of 7.07. Based on Dr. Fronton's orders, the VA lab tested Plaintiff's PSA levels again on December 10, 2002. The VA lab results from 12/10/02 showed that Mr. Gibbons' PSA was 6.98, well above the normal range. Dr. Fronton did not provide Mr. Gibbons with any instructions for follow-up based on his abnormal PSA levels obtained on 9/10/02 and 12/10/02 nor did he refer Mr. Gibbons for a urology consult at the Miami VA Medical Center.

On October 1, 2003, Mr. Gibbons returned again to the Deerfield Beach VA CBOC for his annual physical exam. Dr. Fronton's records state that Mr. Gibbons "would like his blood reevaluated, which we will do[,] another digital rectal exam to recheck his prostate, as his PSA were running between maybe 5.5 and 7.1 on three different readings about a year to a year and a half ago." VA lab results from October 1, 2003 revealed that Mr. Gibbons had an elevated PSA of 7.06.

Dr. Fronton also performed a digital rectal exam which showed that the "prostate was minimally enlarged, but soft to the touch, normal consistency, no lesions, no stony hard areas at all." Dr. Fronton's records clearly state that "[I]f his [Mr. Gibbons'] PSAs are elevated at 7 or above again, I will give him a referral to urology for them to evaluate him and see if they feel a prostate biopsy is indicated. Probably not." Although Mr. Gibbons' PSA was 7.06 and his digital rectal exam revealed an enlarged prostate, Dr. Fronton never referred Mr. Gibbons' to the urology clinic at the Miami VA.

On August 5, 2004, Mr. Gibbons contacted the Deerfield Beach VA CBOC via telephone with complaints of "speckles of blood" in his urine for 24 hours and complaints of

6

itchiness.  According to the medical records, Dr. Fronton ordered a urinalysis based on the Plaintiff's complaints.  However, the records in Plaintiff's possession do not document that any doctor ever saw Mr. Gibbons in person or actually spoke to Mr. Gibbons via telephone about the urinalysis.  The incomplete medical records also do not indicate that Mr. Gibbons was ordered to follow up with the VA urology clinic.

According to the clinical practice guidelines published by the American Urological Association in the Oncology Journal, February 2000, a prostate biopsy is indicated when:

- PSA is 4.0 mg, 1 or more;

- A significant PSA rise from one test to the next; or

- Direct rectal examination is abnormal.

It is uncontroverted that <u>none</u> of the defendants ordered a prostate biopsy prior to March 2005.

In January 2005, Mr. Gibbons began treating at the Bronx VA Hospital.  Lab testing was performed by the VA which showed a significantly elevated PSA level of 10.22.  Mr. Gibbons was finally referred to the urology clinic at the Bronx VA based on his January 2005 abnormal PSA results although there was another incomprehensible delay by the VA between the finding of the 10.22 PSA level and the performance of a biopsy on March 11, 2005 at the Bronx VA.  The biopsy revealed that Mr. Gibbons was suffering from an advanced, Stage III, Grade G3-4, markedly anaplastic cells, Gleason Scale 7-10[3] prostate cancer.

---

[3] The Gleason Scale is commonly used to identify the state of prostate cancer.  The scale runs from 1 on the lowest, most treatable end to a high score of 10 which is the deadliest form of prostate cancer.

7

On May 11, 2005, plaintiff underwent a radical retropubic prostatectomy and pelvic lymph node dissection, followed by extensive radiation therapy from August 22, 2005 up through and including October 7, 2005 at the Bronx VA Hospital.

## ARGUMENT

### POINT I

### DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE PLAINTIFF'S COMPLAINT UNDER F.R.C.P. 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION AS A MATTER OF LAW

**A.**    **Legal Standard for Motion to Dismiss Under Rule 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction under F.C.R.P. 12(b)(1) challenges the court's power to hear the case. *Mortensen v. First Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). It is well settled that a motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) *citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Plaintiff's burden in opposing a Rule 12(b) motion to dismiss is to show by a preponderance of the evidence that jurisdiction does in fact exist. *Mortensen*, 549 F.2d at 891. However, this standard is liberal in that the Plaintiff can survive a motion to dismiss if he can prove any arguable basis in law for the claims asserted. Thus, a motion to dismiss under Rule 12(b) should not be granted if the facts alleged and the inferences reasonably deduced therefrom would entitle the Plaintiff to relief on any theory.

When deciding a Rule 12(b)(1) motion to dismiss, the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Stephens v. Dept. of Health & Human Servs.*, 901 F.2d. 1571, 1573 (11th Cir. 1990).    Therefore, the court must consider whether the complaint, viewed in the light most favorable to the plaintiff, with all inferences resolved on the plaintiff's behalf, articulates a valid legal claim for relief. *Scheuer,* 416 U.S. at 236.

Further, "[t]he issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence in support of his claims." *United States v. Yale New Haven Hosp.*, 727 F. Supp. 784, 786 (D. Conn. 1990), citing *Scheuer*, 416 U.S. at 232.  "'The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Mytych v. May Dep't. Stores Co.*, 34 F.Supp.2d. 130, 131 (D. Conn. 1999), *quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984).

Defendants have failed to demonstrate their entitlement to dismissal as a matter of law. As demonstrated below, the contract provides compelling and overwhelming evidence that an employer-employee relationship was created between Sterling and the Miami VA as a matter of law and thus precludes an award of dismissal to Defendants.

**B.    Independent Contractor Standard for Purposes of the FTCA**

The critical question in determining whether the Miami VA is liable for the negligent acts of Dr. Fronton and Dr. Fine depends on whether these doctors are employees of the federal government as contemplated by the FTCA.

Whether the federal government is liable for the acts of its employees is a question of state law, but whether individuals are employees of the United States under the FTCA is determined by federal law. *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990), *citing Logue v. United States*, 412 U.S. 521, 528 (1973). Analysis of this issue is one that largely depends upon the facts and circumstances in each case.

Factors relevant to this factual inquiry include: (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method reaching the result; (3) whether the physician uses her own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others. *Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989).

Courts have consistently held the <u>second</u> *Lilly* factor, namely, whether the United States ". . . control[s] the manner and method reaching the result," as the most critical factor in determining whether an employee-employer relationship exists. The distinction between an independent contractor and an employee turns "on the absence of authority in the principal to control the physical conduct of the [alleged employee] in [the] performance of the contract." *Logue,* 412 U.S. at 527.

Determining whether the government sufficiently controlled the putative employee's work has been articulated in two ways: (1) whether the federal government had the power "to control the detailed physical performance of the contractor," *Id.* at 528, and/or (2) whether the federal government retained sufficient control over the contractor's "day-to-day" operations, *United States v. Orleans*, 425 U.S. 807, 814 (1976). Thus, the most probative

evidence of whether an individual is an independent contractor or employee for purposes of the FTCA is generally found in the terms of a contract defining a worker's duties. *Williams v. United States*, 50 F.3d 299, 304-5 (4th Cir. 1995), *Norman v. United States*, 111 F.3d 356, 357 (3d Cir. 1997), *Moreno v. United States*, 965 F. Supp. 521, 524 (S.D.N.Y. 1997).

The Second Circuit has been consistent with other courts in affirming that distinguishing employees from independent contractors turns on the second *Lilly* factor. *See Leone*, 910 F.2d at 50; *Taracido v. United States*, 1995 U.S. Dist. LEXIS 4661 (S.D.N.Y Apr. 10, 1995), at*2; *Williams v. United States*, 2007 U.S. Dist. LEXIS 25240 (S.D.N.Y. Mar. 22, 2007), at *42.

The Southern District of New York has analyzed the issue of government control over contract physicians in two medical malpractice cases remarkably similar to the facts presented in the instant matter. In *Taracido v. United States* the defendant doctor treated the plaintiff in the outpatient clinic and later in the emergency room of the Keller Army Community Hospital ("KACH"), a hospital that was run by the United States Military Academy ("USMA") which had contracted with Medical Directions to provide the defendant physician's services to KACH. *Taracido*, 1995 U.S. Dist. LEXIS 4661, at *1. The court denied summary judgment to both Medical Directions and the defendant doctor, finding that there were significant issues of fact which required resolution by the trier of fact, including whether the USMA maintained sufficient control over the activities of Medical Directions based on the contract terms so as to deem the Medical Directions physicians as employees of the USMA. An additional issue of fact were contradictions and inconsistencies in the contract between USMA and Medical Directions and the contract between Medical

Directions and the physicians working at Medical Directions. Therefore, summary judgment was denied. *Id.* at *12, *14.

In *Taracido* despite evidence that the doctor was an independent contractor (the contractor, not the government, assumed liability for the negligence of its agents, paid the physician's salary and the doctor's insurance premiums), there was enough evidence in the contract to demonstrate that the doctor could be found to be an <u>employee</u> of the government because the government had maintained sufficient control over the doctor's performance of his duties. In *Taracido*, governmental control over the doctor's general performance included, among other factors: (1) the government's requirements for patient record documentation, (2) the government's power to validate patient complaints, (3) the government's ability to schedule appointments for the doctor, and (4) the government's prior approval required for all procedures and services provided by the doctor. *Id.* at *10-11.

Therefore, the Court concluded that summary judgment was not appropriate and the contradictory issues should be determined by a jury. A similar result should be reached in the instant matter in light of very similar facts and circumstances with respect to the contract issues. Furthermore, the fact that we have not even received a copy of the contract between the co-defendants Dr. Fronton and Dr. Fine and the medical group Sterling Medical Corp. which may, or may not, reveal inconsistencies with the contract entered into between Sterling and the VA must, as a matter of law, preclude a finding of summary judgment in defendants' favor.

As recently as March 2007, the Southern District of New York in *Williams v. United States* denied summary judgment to the Defendant Bronx VA who had claimed that the defendant doctor was not an employee but rather an independent contractor. The court held

that a fact finder could reasonably conclude that the defendant doctor qualified under the FTCA as an "employee" of the Bronx VA as a matter of law. *Williams*, 2007 U.S. Dist. LEXIS 25240, at *32.

In *Williams*, the Bronx VA had contracted with Mt. Sinai Hospital and Mt. Sinai assigned the defendant doctor to provide gynecological services pursuant to the contract between the Bronx VA and Mt. Sinai. *Id.* at *34. This court determined, on facts strikingly similar to the facts presented in the instant matter, that the Bronx VA controlled the defendant doctor's clinical decisions, in part, because the contract between the Bronx VA and Mt. Sinai provided that the "services to be performed by the Contractor will be under the direction of the Chief of the Bronx VA." *Id.* at *38-39.

Further, the court held that the government retained significant control over the doctor's "day-to-day" operations as demonstrated by the following contract terms: (1) all services were to be performed by the contractor physician in accordance with VA policies and procedures and the regulations of the medical staff By-laws of the VA facility, (2) all surgeries to be performed at the Bronx VA, (3) contractor physicians required to "provide a GYN exam, a pap smear, [and] breast exam", (4) contractor physicians required to see all patients the VA assigned, and (5) all contracting physicians hired were subject to approval of the Bronx VA Chief of Staff. *Id.* at *39-41. Despite the fact that the Bronx VA was not responsible for paying the contracting physician's salary nor his insurance premiums, the *Williams* court held that numerous other contract terms reflected the VA's significant control over the contracting physician's "day-to-day" operations to reasonably conclude that the doctor was an <u>employee</u> for purposes of the FTCA.

13

A similar finding should be made in the instant case. A multitude of the contract terms in this case (see the Preliminary Statement, *supra;* and Point II, *infra*) reflect the VA's significant control over the contracting physician's "day to day" operations and therefore, this Court should find that the defendant doctors were employees as defined by the FTCA.

**C.** **Contract Defining "Employment Status" is Not Controlling**

Defendants' argument that Dr. Fronton and Dr. Fine were "independent contractors" because the contract itself defines the CBOC physicians as such is self-serving and does not prove that these doctors were *in fact* independent contractors. See Defendants' Memorandum of Law pp. 5-9.

The Second Circuit has consistently held that "contract language that defines an individual's employment status is not controlling as to whether the individual is a government employee for purposes of the FTCA." *Williams*, 2007 U.S. Dist. LEXIS 25240, at *36-7; *Tivol v. United States*, 1996 U.S. Dist. LEXIS 22317, at *2 (S.D.N.Y. Sept. 27, 1996), *aff'd*, 164 F.3d 619 (2d Cir. 1998); *Witt v. United States*, 462 F.2d 1261, 1263-64 (2d Cir. 1973). The mere fact that a contract labels an individual an "independent contractor" rather than an employee "is not dispositive" of the issue. *Robinson v. Overseas Military Sales Corp.*, 827 F. Supp. 915, 922 (E.D.N.Y. 1993), *aff'd*, 21 F.3d 502 (2d Cir. 1994); *see also Taracido*, 1995 U.S. Dist. LEXIS 4661, at *14.

Further, "self-serving characterizations are irrelevant and the basic test to be applied is the extent to which the government controls or can control the work of the party in question." *Wright v. United States*, 537 F. Supp. 568 (Ill. Apr. 1, 1982). "Under this test, it does not matter whether the contract itself refers to the parties as "contractor." Rather, it is the level of control retained by the government to control the "contractor" in his "day-to-day

activities – that is, its *authority or power* to do so." *Bravo v. United States*, 403 F. Supp.2d 1182, 1194-95 (11ᵗʰ Cir. 2005).

Therefore, courts have regularly looked beyond express contract language defining individuals as "independent contractors" in favor of weighing the facts "upon consideration of the *entire contract*." *Williams*, 2007 U.S. Dist. LEXIS 25240, at \*43.  Under the FTCA, the definition of employee "'was drafted to have an expansive reach, and should be applied with an eye to general agency law rather than to the formalities of employment contracts.'" *Id.* at \*37 (citations omitted).  Courts have held individuals to be employees despite strong evidence of an independent contractor relationship in the express terms of the contract. *Taracido*, 1995 U.S. Dist. LEXIS 4661, at \*6.

Therefore, Defendants' reliance on contract terms that simply label physicians as independent contractors and/or contract language that merely describes physicians' conditions of employment (i.e. payment of salary and insurance premiums, work hours, and hiring and firing policies) **does not satisfy the analysis required by the <u>second</u> factor in** *Lilly v. Fieldstone.*

**D.**      <u>**Contract Assigning Non-Governmental Entity to Pay Salary is Not Controlling**</u>

Defendants' argument that the VA is not an employer of the CBOC physicians because the VA does not pay their salaries is not controlling for purposes of the FTCA.  The *Williams* court explains in detail:

> The FTCA specifically provides that an individual's employment status under the FTCA is not contingent on compensation by the government. 28 U.S.C. §2671.  Just as salary payment by the government does not, in and of itself, establish an employee-employer relationship, see *Logue v. United States*, 412 U.S. at 529-30, **non-payment by the government similarly does not establish an independent contractor relationship; the relevant inquiry is whether the government sufficiently controlled the individual's 'day-to-day operations,' not whether the government**

15

**did or did not pay the individual's salary.** *See Ezekiel v. Michel*, 66 F.3d 894, 900 (7th Cir. 1995) (characterizing the fact that the physician was not paid by the government to be 'of no moment' to the determination of whether a physician was an independent contractor or employee)." *Williams*, 2007 U.S. Dist. LEXIS 25240, at *38. (emphasis added)

Contract language that describes the conditions of the contracting worker's employment, namely, the payment of the worker's salary, is not the controlling factor in distinguishing between independent contractors and employees for purposes of the FTCA.

**E.     Contract Assigning Non-Governmental Entity to Pay Malpractice Insurance is Not Controlling**

Defendants place great emphasis on the fact that Sterling, and not the VA, was responsible for paying the malpractice insurance premiums for CBOC physicians like Dr. Fronton and Dr. Fine. *See* Defendants' Memorandum of Law, pp. 7-8 and 13. However, the Defendants' reliance on this particular condition of employment is misplaced.

First, the fact that the CBOC physicians' insurance was paid by an entity other than the VA is not dispositive in distinguishing between independent contractors and employees for purposes of the FTCA. The crucial test is whether the government exercised enough control over physicians' "day-to-day" operations to render them employees of the government. *Williams*, 2007 U.S. Dist. LEXIS 25240, at *n. 22; *see also Leone*, 910 F.2d at 50.

Second, the Second Circuit has not typically considered the payment of insurance premiums a significant factor in analyzing the extent of the government's control over a worker's "day-to-day" operations. For example, in *Leone v. United States*, the court devotes less than a full sentence to the fact that the FAA did not pay the defendant physicians' insurance premiums. *Leone*, 910 F.2d at 50. The *Leone* court considered the payment of

insurance premiums as one factor among numerous contract clauses that demonstrated the lack of the government's control over the physicians.

Similarly, the Southern District for New York in *Taracido v. United States* denied the defendant government's motion for summary judgment because evidence that the physician's malpractice insurance was paid by a non-governmental party was insufficient to prove that the defendant physician was an independent contractor in light of other evidence in the contract that weighed in favor of an employer-employee relationship between the government and the physician. *Taracido*, 1995 U.S. Dist. LEXIS 4661, at *12-13; *see also Williams*, 2007 U.S. Dist. LEXIS 25240, at *n. 22.

**POINT II**

**DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE COMPLAINT BECAUSE THE CONTRACT EVINCES AN EMPLOYER-EMPLOYEE RELATIONSHIP BETWEEN DR. FRONTON & DR. FINE AND THE VA**

By virtue of the written contract itself the VA retained significant control over the CBOC physicians' medical judgment, diagnosis and specific course of treatment - the very aspects which give rise to plaintiff's suit. As demonstrated below, the contract between the Miami VA and Sterling provided the VA with enough control over significant aspects of Dr. Fronton and Dr. Fine's physical conduct in the performance of the services they provided as primary and preventative healthcare physicians to render both doctors employees of the federal government.[4]

---

[4] Although Dr. Fine and Dr. Fronton are not directly under the contract between the Miami VA and Sterling, it is undisputed that the Miami VA was capable of entering into a contract with Sterling for the services of Dr. Fronton and Dr. Fine, and that both doctors were bound to the terms of the contract between the Miami VA and Sterling. "Under the FTCA, it is

**A.  VA Controls CBOC Physicians' "Day-to-Day" Performance of Their Primary Care Duties**

Pursuant to the contract, the performance of the CBOC physicians' primary care duties is subject to significant VA supervision and control.  First, the contract explicitly defines CBOC physicians' primary care duties in direct relationship to the VA healthcare system.  CBOC physicians are described as a "point of entry" into the health care system for "non-emergency care" for VA Medical Center patients.  As primary care providers they are also responsible for (1) coordinating all health services provided by the CBOC and the VA Medical Center to enrolled patients and (2) referring patients ". . . to the VA when more specialized services are medically indicated."  See Defendants' Malott Declaration, Exhibit "A", p. 10.    Thus, the VA relies on CBOC physicians for ensuring the continuity of healthcare for VA enrollees for health services provided by the CBOC and the VA Medical Center.

Second, the VA limits the scope of CBOC physicians' duties to providing primary and preventative non-emergent healthcare exclusively.  The VA explicitly limits these duties to:  " . . . medical evaluation, diagnosis and medically necessary treatment of physiological and pathological conditions not requiring referral or in-patient hospital services.  Care is directed towards health promotion and disease prevention, management of acute and chronic medical conditions, appropriate referral to specialty care, and continuity across inpatient and outpatient setting."  *Id.* at p. 10.  Further, CBOC physicians are also required to " . . . perform any/all treatment mandates issued by the VA Headquarters on an annual basis . . ."

---

irrelevant whether the physician contracted directly with the government or through a third party entity." *Linkous v. U.S.,* 142 F.3d 271, 277 (5th Cir. 1998).

*Id.* The contract also requires the VA Chief of Staff to authorize all services furnished by CBOC physicians to VA enrollees. *Id.* at p. 20. Thus, the VA controls the significant details of the CBOC physicians' "day-to-day" operations in connection with their role as primary care providers. Moreover, CBOC physicians are subject to yearly modifications of their duties as defined exclusively by the VA.

Third, the VA strictly controls and monitors referrals made by CBOC physicians to the VA Medical Center for all emergency care, inpatient care, and specialist consultations/services. According to the contract, CBOC physicians must (1) seek "specialty consultations" within 24 hours of treating the VA enrollee, (2) request the consultation via the Consult Tracking System in Veteran's Health Information System and Technology Architecture (VISTA), (3) make referrals in accordance with the guidelines prescribed by the VA, and (4) provide detailed documentation to the VA in accordance with VA mandates. *Id.* at p. 10. Additionally, the VA reserves the right to "conduct retrospective reviews of specialty consult referrals." *Id.* It is plainly evident that the VA retains significant control over numerous details of the CBOC physicians in their role as referring physicians.

Despite Defendants' argument to the contrary, CBOC physicians in the instant matter are nothing like the FAA AME's (Aviation Medical Examiners) in *Leone v. United States*. See Defendants' Memoramdum of Law pp. 14-15. *Leone* held that the FAA AME's were independent contractors and not government employees for purposes of the FTCA because the FAA did not ". . . manage the details of an AME's work or supervise him in his daily duties." *Leone*, 910 F.2d at 50. Unlike FAA AME's in *Leone*, whom the court describes as specialists "who usually work without supervision," the CBOC physicians in this matter are

limited to providing basic primary and preventative care exclusively. *Id.* Further, the role of AME's in *Leone* is limited to renewing or denying medical certificates to airmen. *Id.* at 5.

In stark contrast, the duties of CBOC physicians are completely circumscribed by their obligations to the VA, namely, (1) ensuring the continuity of care that VA enrollees receive for treatment rendered at the CBOC and the VA Medical Center and (2) referring VA enrollees to the VA for all emergency, surgical and/or specialist care. Lastly, the AME's in *Leone* operate with minimal FAA input and ". . . necessarily rely on their own professional judgment in making certification decisions" unlike the CBOC physicians in the instant matter whose "day-to-day" operations, including type of care they provide, the manner in which they provide that care, and the method for making referrals to the VA, are closely and strictly monitored by the VA. *Id.* at 15.

**B.    VA Controls CBOC Physicians' "Day-To-Day" Performance of Their Preventative Care Duties**

Under the contract at issue, the VA retains significant control over the most important aspects of CBOC physicians' "day-to-day" responsibilities in the performance of preventative screening.

First, the contract mandates specific screening tests to be performed by CBOC physicians. The contract states in pertinent part:

> The contractor's preventative health care program will include but not be limited to: screening for established risk factors for cardiovascular disease; hypertension, cholesterol, screening for breast, cervical, and colorectal cancer; diabetes; nutritional guidance; patient education; weight control, physical fitness/exercise; and the identification of alcohol and substance abuse. See, Defendants' Malott Declaration, Exhibit "A", p. 11.

The specific course of treatment for preventative care described in the contract language above suggests that the VA exercises significant control over the CBOC physicians' clinical

decisions and actively supervises the details of the physicians' "day-to-day" operations. Similarly, the contract language in *Williams v. United States* which required the contracting doctor to "'provide a GYN exam, pap smear, [and] breast exam'" as part of his course of treatment was a significant factor in weighing the evidence in favor of the defendant physician being an employee of the Bronx VA. *Williams*, 2007 U.S. Dist. LEXIS, at *41.

Second, the contract between the VA and Sterling directs and controls when CBOC physicians should perform screening tests: "Frequency of such screening will be in accordance with VA practice guidelines and other expert groups." Defendants' Malott Declaration, Exhibit "A", p. 11. Of note, Plaintiff has not been provided with any VA screening protocols and is therefore deprived of information that may shed light on the degree of control the VA exercised over the CBOC physicians' clinical decisions and medical judgment.

Third, the contract requires CBOC physicians to process all laboratory testing through the VA:

> **All laboratory testing will be required to be processed through the VA.** The contractor(s) will be responsible for the proper collection, collection supplies, and preservation of specimens within the capitation allowance. **Transportation of the specimens to VA will be arranged through VA.** (emphasis added) *See* Defendants' Malott Declaration, Exhibit "A", p. 10.

Fourth, the contract is explicitly drafted to ensure the VA's supervision of processing all test results and patient follow-up. Specifically:

> Results reporting will be available to the contractor(s) through VISTA (refer to Section P-Medical Records requirements). Critical Lab value results will be reported initially by telephone to the ordering practitioner. The Contractor(s) shall notify patients regarding lab and x-ray results within appropriate time frames and provide follow-up treatment within the scope of the contract. Critical lab value results must be addressed

immediately. **Any waive testing provided by the contractor(s) must be approved by the VA and in compliance with VA, College of American Pathology (CAP), and JCAHO regulations. A VA Medical Center driver will pick up labs from the Primary Care Clinic two (2) times a day and deliver to the VA Medical Center**. Stat lab request shall be referred to the Contracting Officer's Technical Representative (COTR) who shall review on a case by case basis. **If clinically indicated, the patient shall be referred to the VA**. (emphasis added) Defendants' Malott Declaration, Exhibit "A", p. 10.

The VA's explicit supervision over core aspects of CBOC physician's preventative care duties, namely, their performance of preventative screening, demonstrates that the government retains substantial control over the "day-to-day" operations of CBOC physicians. At the heart of Plaintiff's case is the failure of Dr. Fronton and Dr. Fine to timely follow-up and make proper referrals to the VA upon receipt of the Plaintiff's abnormal test results which consistently showed high PSA levels. The VA's control over all screening procedures, lab testing, lab/physician coordination for processing abnormal results, patient record-keeping, patient follow-up, and referrals for specialist consultations demonstrates that the VA directs not only the "end result of the medical care" provided by Dr. Fronton and Dr. Fine, but "the manner and method of reaching the result" as well. *See Williams*, 2007 U.S. Dist. LEXIS, at *42; *see also Taracido,* 1995 U.S. Dist. LEXIS 4661, at *2.

**C.  VA Controls Patient Records and Record Keeping by CBOC Physicians**

Pursuant to the contract, the VA exercises significant control over the details of the performance of CBOC physicians' work through its exclusive control over patient record-keeping, clinical reminders for patient follow-up, and CBOC physician compliance with record keeping procedures. In *Taracido v. United States*, the court cited the ability of the governmental employer to make appointments for the professional and keep patient records

as one of several important factors in determining whether a putative employer controls the details of a professional's work. *Taracido*, 1995 U.S. Dist. LEXIS 4661, at *14.

Specifically, the contract in the instant matter requires that all patient test results and follow-up be mediated through the VA's Clinical Reminders System in VISTA:

> The contractors will utilize and maintain the Clinical Reminders tracking system in VISTA which identifies the current preventative services screening status and pending preventative services screening due dates for each enrolled patient. Defendants' Malott Declaration, Exhibit "A", Part D, ¶2, p. 11.

The VA also strictly controls the requirements for medical record documentation:

> Medical Record Documentation will be current and consistent with VAMC [Veterans Administration Medical Center] Miami medical documentation requirements. VA utilizes an automated electronic medical record (EMR). Documentation will include an appropriate history and physical examination, review of systems, assessment and plan of care based on the level of care required by the patient at the time of the examination. A problem or summary list will be maintained for any patient that is seen at three or more outpatient visits. The problem list will include: known significant medical diagnosis and conditions; known significant operative and invasive procedures; known adverse and allergic drug reactions; and medications, including over the counter medications, known to be prescribed or used by the patient. Documentation will also include VA Performance measures and preventive indices as appropriate to the patient's age and condition. Defendants' Malott Declaration, Exhibit "A", Part P, ¶1, p. 17.

Further, the VA requires CBOC physicians who seek specialist consultations to process their requests through the VA's VISTA system. The contract provides detailed instructions for medical record documentation for specialty consultation requests:

> Specialty consultations shall be entered into the Consult Tracking System in Veterans health Information System and Technology Architecture (VISTA) by the contractor(s) within twenty-four (24) hours of the patient's pertinent medical history, the significant physical findings and any pertinent diagnostic studies performed to date. . . the VA may conduct retrospective reviews of specialty consult referrals. Results of the reviews

will be provided to the contractor(s) within one week of being finalized. Defendants' Malott Declaration, Exhibit "A", Part B, ¶4, p. 10.

The VA also retains the right to "perform routine inspections to verify workload entered into VISTA by contractor(s) is documented in the patient's medical records and to assure records are maintained properly." *Id.* at ¶ 9(a), p. 23.

In sum, the contract between Sterling and the Miami VA demonstrates how the VA controls nearly every aspect of CBOC patient record keeping, including but not limited to: [1] providing VISTA training (¶5, p. 18), [2] maintaining the VISTA electronic record-keeping database utilized by CBOC physicians (¶2, p. 17), [3] setting standards for patient medical record documentation (¶1, p. 17), [4] mandating documentation requirements for specialty consultations (Part B, ¶4, p. 10), [5] identifying screening due dates (¶2, p. 11), and [6] inspecting CBOC physician's medical documentation in VISTA (¶9(a), p. 23).

### D. VA Controls CBOC Physicians' Patients

The VA exercises significant control over the CBOC physicians' patient load and thereby deprives CBOC physicians of significant control in the supervision of their patients.

First, the VA retains "sole authority to enroll and determine eligibility of patients to be treated by the contractors." Defendants' Malott Declaration, Exhibit "A", ¶1(a), p. 16. Moreover, **any CBOC physician who provides services to a patient without verifying eligibility "shall not be entitled to payment from the VA for the services so provided."** (emphasis added) *Id.* at ¶3, p.13. **The VA also retains "sole authority to remove, at any time, an enrolled patient from the responsibility of the contractors(s)."** (emphasis added) *Id.* at ¶ 1(e), p. 16.

Second, there is no evidence in the contract that CBOC physicians have a choice in the VA patients they treat once eligibility is confirmed by the VA.

24

The District Court for the Southern District of New York recently determined in *Williams v. United States* that the government's control over the contract physician's patient load, along with other factors, weighed in favor of construing the defendant doctor to be an employee of the federal government rather than an independent contractor. *Williams*, 2007 U.S. Dist. LEXIS, at *41-2 (holding that a contract which required the defendant doctor to see "[a]ll female patients. . . including long-term care patients" as evidence that the doctor had no control over this aspect of his job).

Similarly, in *Costa v. United States*, the court found the federal government's requirement that the defendant physician treat whoever came into the VA gynecology clinic on the days he was attending relevant to determining whether he was an employee of the federal government. *Costa v. United States*, 845 F. Supp. 64, 68 (D.R.I. 1994).

Conversely, the defendant physician (a consulting urologist) in *Lilly v. Fieldstone* was deemed to be an independent contractor for purposes of the FTCA, in part, because the physician could refuse to treat a military patient, if he chose to, and had exclusive control over his patients and record keeping for his patients. *Lilly*, 876 F.2d at 860. In *Leone v. United States*, the court similarly found that the FAA did not exercise sufficient control over independent aviation medical examiners ("AMEs") because, in part, "each AME is free to examine as few or as many applicants as he desires." *Leone*, 910 F.2d at 50.

Third, the VA subjects CBOC physicians to detailed patient-reporting requirements. The Miami VA mandates that "The Contractor(s) will report workload for each enrolled patient within twenty-four (24) hours of his/her visit through VISTA in accordance with established VA reporting procedures." Defendants' Malott Declaration, Exhibit "A", ¶ Q(1), p. 18.

Fourth, CBOC physicians do not set their own timetables for patient appointments; rather, the VA sets the standards for patient access to CBOC physicians. The contract reads in pertinent part: "Access: VA Standards currently require access to the primary care provider within 7 calendar days for established patients and 30 calendar days for new patients." *Id.* at p. 10.

As demonstrated above, CBOC physicians have virtually no control over the VA patients they treat at the Deerfield Beach VA CBOC.

### E. VA Prescribes Clinical Guidelines for CBOC Physicians

The contract also demonstrates that the VA exercises significant control over the CBOC physicians' medical judgment by mandating that all CBOC physicians comply with VA medical guidelines and procedures. The contract states in pertinent part: **"The contractor(s) shall conform to all issues addressed in the VA Medical Staff By-laws and the VA Medical Center Memorandums pertaining to the delivery of services."** (emphasis added) Defendants' Malott Declaration, Exhibit "A", ¶6, p. 23. Significantly, and tellingly, Defendants have not provided any VA Medical Staff By-laws nor any VA Medical Center Memorandums pertaining to the delivery of services by CBOC physicians.

The VA requires CBOC physician compliance with all VA policies. "Contractor(s) shall comply with all VA Miami's policies, procedures, rules and regulations for providing services under this contract . . ." Defendants' Malott Declaration, Exhibit "A", Part G, ¶ 6, p. 23.

The court in *Williams v. United States* held that the Bronx VA's requirement that the independent contractor perform services "in accordance with VA policies and procedures and the regulations of the medical staff By-laws of the VA facility" to be relevant in

determining the degree of control that the VA retained over the defendant doctor's "day-to-day operations." *Williams*, 2007 U.S. Dist. LEXIS 25240, at *39-40. *See also Costa*, 845 F. Supp. at 68 (finding that the defendant physician who was bound by the VA's "Hospital by-laws, policies and procedures" weighed in favor of an employer-employee relationship between the physician and VA Hospital).

**F. VA Monitors and Evaluates CBOC Physicians' Work**

Pursuant to the terms of the contract, the VA maintains the authority to monitor the quality and performance of the numerous aspects of the CBOC physicians' work, including: [1] CBOC physician compliance with contract services provided to VA eligible enrollees, [2] patient record-keeping, and [3] patient satisfaction with CBOC physicians' performance The relevant portions of the contract are as follows:

> 1)    The contractor(s) shall have a quality monitoring/performance improvement program that is approved by the VA Miami. This program will be available for review of VA staff. Any changes to the program structure after VA has reviewed the program shall require notification to the VA.
>
> 2)  **The Contractor(s) shall permit on-site visits of VA personnel and accrediting agencies to assess contracted service, e.g. adequacy, compliance with contract requirements, record keeping, etc. Contractor's medical records and electronic data sources will be made available to the VA staff for purposes of accessing documentation, quality of care compliance with VHA preventive medicine and clinical guideline estimates. Performance goals will be the same as for VHA facilities and will be provided to contractor(s) on an annual basis.** Contractor(s) will distribute provider specific patient satisfaction surveys, as provided by VA. Completed surveys will be returned to VA for analysis. **Contractor(s) will be expected to match VA's performance on patient satisfaction survey. Contractor shall conduct audits pertaining to access, quality improvement, documentation and safety and submit reports on a monthly basis to the Contracting Officer's Technical Representative (COTR).** (emphasis added) Defendants' Malott Declaration, Exhibit "A", Part R, ¶1-2, p. 19.

27

### G. **VA Reviews and Approves Personnel**

Lastly, pursuant to the contract, the Miami VA retains the control over the contractor's hiring practices. According to the contract, "[t]he qualifications of such personnel [CBOC physicians] shall be subject to review by the VA Professional Standards Board, Executive Committee of the Medical Staff, and approval by VA facility Director." Malott Declaration, Exhibit "A", ¶c(1), p. 22. Again, the Southern District Court for the State of New York in *Williams* found that the Bronx VA exerted control over the contractor's "day-to-day" operations when it required VA approval in the hiring of all contracting physicians. Williams, 2007 U.S. Dist. LEXIS 25240, at *39.

### POINT III

### DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE PLAINTIFF'S COMPLAINT BECAUSE THE VA WAS NEGLIGENT IN THE HIRING AND SUPERVISION OF CBOC PHYSICIANS

While defendants boldly seek summary dismissal of plaintiff's complaint, they have failed to address plaintiffs' third cause of action for medical facility negligence in its entirety.

As more particularly set forth in plaintiff's Summons and Complaint (*see* Penn Declaration, Exhibit "B"), the plaintiff alleges and numerates several allegations of negligence directly against the VA for the negligent hiring and retention of unqualified physicians. Critically,

> The UNITED STATES OF AMERICA failed and neglected to utilize and apply proper and acceptable standards and criteria in its hiring of its physicians and other medical personnel; failed and neglected to evaluate and properly assess the performance of those physicians applying for employment or professional privileges or renewal thereof; failed and neglected to monitor and supervise the qualifications and performances of its attendings, residents, family doctors, internists and other professional

28

staff; failed and neglected to conduct an appropriate investigation or background check into the professional history and records of physicians and other members of its staff from previous and/or other hospitals and/or health care facilities with which they had been previously employed or affiliated; failed and neglected to conduct the necessary periodic reviews of the competence of its medical staff as required; failed and neglected to properly supervise and control the actions and performances of physicians and other personnel practicing and/or employed by and at its facility; failed and neglected to strictly comply with statutory credentialing requirements and in generally failing to observe all necessary protocol, practices and procedures, both statutory and in common and in usual use in the profession.

*See* Penn Declaration, Exhibit "B" at ¶ 50.

Defendants' failure to address plaintiff's cause of action for negligent hiring and retention precludes the dismissal of plaintiff's claims as a matter of law. Defendant has the burden of proving "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

In reviewing a Rule 12(b)(6) motion, the task of the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). A court will accept the plaintiff's factual allegations as true, drawing reasonable inferences in plaintiff's favor. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

Moreover, a complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). "The threshold of sufficiency that a complaint must meet to survive a motion to

dismiss is exceedingly low." *Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983).

As discussed *supra*, plaintiff sued the United States in federal district court under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), 2671 *et seq.*, a federal statute that looks to state law to determine whether the sovereign immunity of the United States has been waived and the federal government can be held liable in tort. *See* 28 U.S.C. § 2674 (United States may be liable "to the same extent as a private individual under like circumstances" under state law). *Id.*

Accordingly, liability for an accident based on the alleged negligence of an employee of the United States is governed by the laws of the state where the tort occurred. *See* 28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1, 11 (1962).

It is plaintiff's contention that the defendants were negligent in the hiring of Sterling Medical Associates as doctors Fine and Fronton were unqualified to provide competent medical treatment to the plaintiff and as a result failed to diagnose his prostate cancer. Upon information and belief, based on the limited discovery available to plaintiff, the Contract was entered into and performed in the State of Florida.[5]

Under Florida law tortious actors may be liable for their negligent hiring or retention of an incompetent, dangerous agent or servant under circumstances which establish that the defendant knew or should have known of the agent's or servant's incompetence and

---

[5] Upon information and belief, the VA Contract Specialist, Cathy A. Pridlides maintains an office at 1201 N.W. 16th Street, Miami, Florida 33125.   *See* Marlott Declaration, Exhibit "A".   The CBOCs including Deerfield Beach Hospital are all located in Florida. *Id.*

dangerousness, and the likelihood or foreseeability that such agent or servant would injure a third person.[6]

Such misfeasance has long been recognized as a basis for tort liability in Florida. *See Mallory v. O'Neil*, 69 So. 2d 313 (Fla. 1954); *Tallahassee Furniture Co., Inc. v. Harrison*, 583 So.2d 744 (Fla. 1st DCA 1991), *rev. denied*, 595 So. 2d 558 (Fla. 1992); Garcia v. Duffy, 492 So.2d 435 (Fla. 2d DCA 1986). This common law duty is set forth in Restatement (Second) of Torts § 317[7] and Restatement (Second) of Agency 2d § 219(2) and § 213.

Notwithstanding the assertion that Sterling Medical Corporation was an employee of the United States, discussed above in Point II of Plaintiff's Memorandum of Law, the fact that a dangerous condition was created or partially caused by an independent contractor will not shield an employer from legal liability, if the employer was negligent in failing to take sufficient precautions to alleviate the dangerous situation. *See, e.g, Maule Industries v.*

---

[6] *See McCain v. Florida Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992) ("The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."); *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989) ("Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm). *See e.g,. K.M. ex rel. D.M. v. Publix Super Mkts., Inc.*, 895 So. 2d 1114 (Fla. Dist. Ct. App. 2005); *Shurben v. Dollar Rent-A-Car*, 676 So. 2d 467 (Fla. Dist. Ct. App. 1996). *See also U.S. Fidelity & Guar. v. Toward*, 734 F. Supp. 465, 470 (S.D. Fla. 1990) (the gist of negligent hiring and supervision is that the defendant acted unreasonably in letting another party to whom he had a duty to control commit a wrong against the plaintiff).

[7] A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
   (a)  in giving improper or ambiguous orders of in failing to make proper regulations; or
   (b)  in the employment of improper persons or instrumentalities in work involving risk of harm to others:
   (c)  in the supervision of the activity; or
   (d)  in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.
*See*, Restatement (Second) of Torts § 317.

*Messana,* 62 So.2d 737 (Fla. 1953); *Peairs v. Florida Publishing Co.*, 132 So.2d 561 (Fla.1st

DCA 1961); *Warren v. Hudson Pulp & Paper Corp.*, 477 F.2d 229 (2d Cir. 1973).

Additionally, the VA may be vicariously liable for the acts of doctors Fine and

Fronton even if they were independent contractors, if the defendants acted with the apparent

authority of the VA. *Cuker v. Hillsborough County Hosp. Auth.*, 605 So. 2d 998, 999 (Fla.

2d DCA 1992). The doctrine of apparent authority has been applied to physicians who

rendered care and treatment to individuals treated in hospital emergency rooms, *see Orlando*

*Regional Medical Center, Inc. v. Chmielewski*, 573 So. 2d 876 (Fla. 5th DCA 1991), as well

as in hospital departments other than emergency rooms, *see Cuker*, 605 So. 2d 998. The

question of a physician's apparent authority to act is often a question of fact for the jury. *See*

*Cuker*, 605 So. 2d at 999 (Fla. 2d DCA 1992); *Chmielewski*, 573 So. 2d at 876.

Accordingly, defendant had a duty pursuant to Florida common law to investigate

and diminish the threat of unqualified physicians rendering medical treatment at the CBOC

to the plaintiff and like Veterans.    An appropriate investigation would have revealed the

unsuitability of the defendants to provide medical care and it was unreasonable for the VA to

hire Sterling Medical in light of the information it knew or should have known about the

qualifications of doctors Fine and Fronton. *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002).

Further scrutiny of the "Contract" reveals that not only did the VA acknowledge the

dangers of unqualified personnel rendering medical treatment to the plaintiff, it retained

substantial control over the personnel and hiring decisions of CBOC health care providers:

> - "Any sub-contractor(s) utilized by the contractor(s) for the provision of
>   services required must meet the same qualifications specified herein (the
>   contract) for the Contractor(s). The Contractor [CBOC] must obtain approval
>   from the Contracting officer [VA] for any sub-contractors to be utilized for
>   the provision of services required under this contract." *See* Malott
>   Declaration, Exhibit "A" at 22, item #4(e).

32

- "Contractor(s) [CBOC] shall comply with all of VA Miami's polices, procedures, rules and regulations for providing services under the contract …". *See* Malott Declaration, Exhibit "A" at 13, ¶ G #4.

- "The VA shall not approve of subcontracts with unlicensed individual or group providers. VA will rescind sub-contractor(s) approval if the sub-contractor(s) should lose their license during the course of the contract." *See* Malott Declaration, Exhibit "A" at 13, ¶ J #2.

- "No physician (including subcontractors) assigned by the contractor(s) shall have ever had a medical license suspended, revoked, [or] limited by a State …. The qualifications of such personnel shall be subject to review by VA Professional Standards Board, Executive Committee of Medical Staff, and approval by the VA facility Director. *See* Malott Declaration, Exhibit "A" at 22, item #4(c)(1).

However, it is uncontroverted that at a minimum, Defendant Fine was disciplined by the Florida Department of Health as far back as September 18, 2000. *See* Plotkin Declaration, Exhibit "B".

Moreover, it is undisputed that the respective defendants were not certified in urology (*See* Plotkin Declaration, Exhibit "B") and it is undetermined if the doctors held themselves as specialists in the field for which the plaintiff relied upon to his detriment. It is without question that Defendants Dr. Fine and Dr. Fronton evaluated the plaintiff's significantly elevated PSA levels and based their allegedly negligent treatment upon those levels. However, upon information and belief, the respective doctors were not trained, certified or experienced in the reading, interpreting and evaluation of PSA levels or the treatment of prostate cancer. Upon the limited discovery available to plaintiff, the respective Defendant doctors were *only* certified in Family Practice medicine.

Further, plaintiff has asserted a direct negligent hiring claim against the VA. *See* Penn Declaration, Exhibit "B" at ¶ 50. The plaintiff's medical records demonstrate that at a minimum his records and test results were repeatedly seen by other doctors or specialists in

the VA system. It is unknown at this time whether any other specialists were VA employees, whether the outside labs run by the VA were staffed with VA employees[8] or whether there was any other direct involvement by the VA in the alleged negligent treatment of the plaintiff.

It is premature to dismiss a case where substantial discovery is required. As defendant's motion under Rule 12(b)(6) cannot be resolved until after further discovery has been conducted, it is respectfully submitted that defendant's motion should be denied in its entirety. *See, Streit v. Bushnell*, 424 F.Supp 2d 533 (S.D.N.Y. 2006), *GTFM Inc. v. Int'l Basic Source, Inc.,* 2002 U.S. Dist. LEXIS 345 (S.D.N.Y. 2002); *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633 (S.D.N.Y. 2001) ("although courts may convert a Rule 12(b)(6) motion into a motion for summary judgment without formal notice to the parties, it is generally inappropriate for a court to do so when . . . the parties have not had the opportunity to complete discovery"); *Dubai Islamic Bank v. Citibank*, N.A., 126 F. Supp. 2d 659 (S.D.N.Y. 2000) (since discovery could lead to evidence related to whether defendant had a "duty" to plaintiff independent of any alleged contractual obligations, the court declined to dismiss the negligence claim).

---

[8] "All laboratory testing required will be required to be processed through the VA." See Defendants' Exhibits, "Mott Declaration," Exhibit "A", p. 10. "Transportation of the specimens to VA will be arranged through VA." *Id.* "Stat lab requests shall be referred to the Contracting Officer's Technical Representative (COTR) who shall review on a case by case basis. If clinically indicated, the patient shall be referred to the VA" *Id.*

**POINT IV**

**DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF PLAINTIFF'S
COMPLAINT AGAINST THE BRONX VA UNDER 12(b)(6) FOR
FAILURE TO STATE A CLAIM**

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991).

Further, a court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957); *see also Still v. DeBuono*, 101 F.3d 888 (2d Cir. 1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing *Scheuer*, 416 U.S. at 236).

The Supreme Court has pointed out in *Conley v. Gibson* that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' (Rule 8(a)(2)) that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.' *Conley v. Gibson*, 355 U.S. 41, 78 (1957).

In support of its argument, Defendants have cited *Ferro v. Railway Express Agency, Inc.*, 296 F.2d 847 (2d Cir. 1961), to prove that the Plaintiff allegedly failed to state a valid cause of action against the Bronx VA because Plaintiff allegedly failed to provide "fair notice of what the plaintiff's claim is and the ground upon which it rests".  However,

35

Defendants fail to point out that all the Federal Rules of Civil Procedure require is 'a short and plain statement of the claim' (Rule 8(a)(2))" in order to provide the defendant(s) with "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Ferro v. Railway Express Agency, Inc.*, 296 F.2d at 850. Further, as *Ferro* holds, the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Id. See also Streit v Bushnell*, 424 F. Supp.2d 633 (S.D.N.Y. Mar. 23, 2006) (interpreting the Fed. R. Civ. P. 8(a)(2) as a "liberal" pleading requirement wherein a plaintiff need provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 14).

In the instant matter, plaintiff's complaint sufficiently sets forth a concise statement of allegations against the Miami VA and the Bronx VA to warrant a denial of dismissal of the cause of action against the Bronx VA. A copy of Plaintiff's Complaint is attached to Defendants' Penn Declaration, Exhibit "B".

First, Plaintiff's Complaint specifically alleges that the patient WILLIAM GIBBONS has been under the care and treatment of the VA Healthcare System on a "continuing and regular basis" "at different VA facilities, including both the Bronx VA and the Miami VA" and provides the relative dates of treatment as to both the Miami VA and the Bronx VA.

Second, the plaintiff lists the specific locations of the Bronx and Miami VA that he received treatment. Defendants' Penn Declaration, Exhibit "B", p. 6.

Third, Plaintiff sets forth the specific complaints for which Mr. Gibbons sought treatment at the Bronx VA, to wit, "complaints of rectal bleeding and blood in urine" and consistently abnormal PSA's. *Id.*

And <u>fourth</u>, Plaintiff sets forth with sufficient particularization the negligence committed by both the Bronx VA as well as the Miami VA, including but not limited to the failure to properly and timely diagnose and treat the plaintiff for the very same complaints he communicated to the Bronx VA Medical staff upon beginning treatment in January of 2005, namely complaints of rectal bleeding, blood in his urine, and consistently abnormal PSAs and the failure to timely perform a biopsy based on the dangerously high PSA levels. Defendants' Penn Declaration, Exhibit "B", p. 8-10.

Therefore, without a complete medical record from Defendants nor any other discovery, plaintiff served his complaint with as much particularity as possible at this point in time. Moreover, plaintiff has satisfied the Fed. R. Civ. P. which requires only a short and concise statement of the claim. Due to the limited record before the court, a dismissal of the within action against the Bronx VA at such a premature point in time would be severely prejudicial to the plaintiff.

**POINT V**

**DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF PLAINTIFF'S COMPLAINT UNDER F.R.C.P. 12(b)(1) AND 12(b)(6) BECAUSE IT IS PREMATURE TO DISMISS AN ACTION WHERE SUBSTANTIAL DISCOVERY IS REQUIRED**

In the absence of a "properly balanced and reliable evidentiary record," the court should not dismiss a complaint because disposing of a dispute at this early stage in the litigation ". . . runs counter to [the] vital principle of public policy that is embodied in our justice system and entrusted to the courts: insuring fairly to every litigant the right to his day in court. *Streit v. Bushnell*, 424 F. Supp. 633, 638 (S.D.N.Y. Mar. 23, 2006).

Further, it is premature to dismiss a case where substantial discovery is required because the Federal Rules "provide no agile means enabling the Court to make the value

37

judgments, credibility determinations and resolutions of factual disputes" in the absence of sufficient discovery. *Id.* at 638; *see also Conrac Corp. v. American Telephone & Telegraph Co.,* 546 F. Supp. 429 (S.D.N.Y. Aug. 31, 1982).

Litigation of this matter is in its infancy. The initial court conference has not been held to date and depositions have neither been held nor scheduled. Evidence of Dr. Fronton and Dr. Fine's employment status turns, in part, on evidence that has not yet been introduced into the record.

To date Plaintiff has **not** been provided with the following:

- A certified and complete copy of the Plaintiff's medical record from the Miami VA and Bronx VA;

- Billing records from the Miami VA and Bronx VA indicating all dates of treatment;

- Pathology slides and re-cuts from the Miami VA and Bronx VA;

- Radiology films and reports from the Miami VA and Bronx VA;

- A copy of the contract(s) between <u>Sterling and Dr. Fronton and Dr. Fine</u> for the years 2001, 2002, 2003, and 2004 detailing the conditions of their employment and their relationship to Sterling and the Miami VA;

- A copy of the contract(s) between the <u>Miami VA and Sterling</u> for the years 2002, 2003, and 2004. Plaintiff has only been provided with a copy of the contract dated 2001;

- A copy of the VA guidelines for preventative screening the VA required for all CBOC physicians;

- A copy of the VA Medical Staff By-laws and VA Medical Center Memorandums pertaining to the delivery of services; and

- Critical discovery to determine the applicability of the Consolidated Health Center Program under section 330 of the Public Health Service (PHS) Act (42 U.S.C. 254b), pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA") of 1992 and 1995, to the Deerfield Beach Community-Based Outpatient Clinic ("CBOC"). FSHCAA deemed applicable Health

Centers and their officers, directors, employees and contractors are Federal employees for claims and suits arising out of medical or related functions. *See* 42 U.S.C. §233(g) (1)(A).[9]

Since there has been no discovery to date, Plaintiff has been deprived of the opportunity to fully explore and evaluate the relationship between the VA and the contracting physicians Dr. Fronton and Dr. Fine. Moreover, Plaintiff has not been furnished with the Bronx VA and the Miami VA's complete medical records, including all lab results, pathology slide and re-cuts, radiological films and reports and billing records. Thus, dismissal of plaintiff's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and failure to state a claim against the Bronx VA under Rule 12(b)(6) would be highly prejudicial in light of the bare and incomplete record before the court.

## CONCLUSION

There is overwhelming and substantial evidence to establish by a preponderance of the limited evidence available that the conditions of Dr. Fine and Dr. Fronton's employment were controlled by the VA to the extent necessary to create an employer-employee relationship. The VA's exercise of significant control over the numerous aspects of preventative and primary care provided by the CBOC physicians' stands in sharp contrast to the language of the contract labeling CBOC physicians "independent contractors." Further, Plaintiff claims that the VA itself is negligent in failing to properly hire and supervise physicians who worked at the outpatient clinics pursuant to contract. Last, Plaintiff's complaint sufficiently sets forth a "short and concise" statement of the claims against both the Bronx VA and the Miami VA in order to satisfy the Fed. R. Civ. P. Rule 8(a)(2).

---

[9]  The limited discovery available to plaintiff, namely the "Contract", characterizes the Deerfield Beach Community-Based Outpatient Clinic where Defendants Dr. Fronton and Dr. Fine provided health services to eligible VA enrollees as a "Community-Based Primary Care Clinic." As such, section 330 of the Public Health Service (PHS) Act (42 U.S.C. 254b) for "Community Health Center" ("CHC") Programs, funded under section 330(e) and the FSHCAA, may be applicable to the Deerfield Beach CBOC at issue in the within action.

**WHEREFORE**, it is respectfully requested that based on the evidence submitted herein, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) should be denied in its entirety.

Dated: New York, New York
　　　　September 18, 2007

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　SHERRI L. PLOTKIN (SLP 3216)
　　　　　　　　　　　　　　　　　　　　　　　　**BARTON, BARTON & PLOTKIN, LLP**
　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　　　　420 Lexington Avenue
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10170
　　　　　　　　　　　　　　　　　　　　　　　　Tel.: 212-687-6262

To:

**Michael Joseph Gudzy, Esq.**
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
Attorneys for Defendants DR. FRONTON, DR. FINE
AND STERLING CORP.
150 East 42nd Street
New York, N.Y. 10017-5639

**Gail A. Matthews, Esq.**
United States Attorneys Office
Attorneys for Defendants U.S.A. and DEPT. of VA AFFAIRS
One Pierrepont Plaza, 14th Floor
Brooklyn, N.Y. 11201