UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
WILLIAM G. GIBBONS,                      :
                                         :
       Plaintiff,                      :       ECF Case
                                         :
      -against-                          :       07 Civ. 2801 (MGC)
                                         :
LEONARD FRONTON, D.O., STEVEN FEIN,      :
M.D., STERLING MEDICAL CORPORATION,      :
DEPARTMENT OF VETERANS AFFAIRS,          :
and THE UNITED STATES OF AMERICA,        :
                                         :
       Defendants.                     :
                                         :
                                         :
------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
DEPARTMENT OF VETERANS AFFAIRS AND UNITED STATES OF AMERICA'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**

                                            MICHAEL J. GARCIA
                                            United States Attorney for the
                                            Southern District of New York
                                            Attorney for Defendants the Department of
                                            Veterans Affairs and the United States
                                            of America
                                            86 Chambers Street, 4th Floor
                                            New York, New York  10007
                                            Tel:  (212) 637-2725
                                            Fax: (212) 637-2702

ALLISON D. PENN (AP-3787)
Assistant United States Attorney
      -- Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................. 2

ARGUMENT ................................................................. 2

I.     Plaintiff Has Failed to Demonstrate that Sterling, Fronton, and Fine Were Employees of the Government Rather than Independent Contractors ........................ 2

    A.     The Contract Provisions Relied on By Plaintiff Do Not Show that Sterling or the Doctors.Were Subject to the Day-to-Day Control of the VA ............ 2

    B     The Contract Provisions and Declarations Show that Sterling, Fine and Fronton Were Not Government Employees ................................ 6

    C.     Williams and Taracido Are Distinguishable ............................. 8

    D.     There is No Need For Additional Discovery Because the Other Medical Professionals Whose Names Appear on the Records are Not Government Employees ......................................................... 10

II.     Plaintiff's Negligent Supervision and Hiring Claim Against the United States is Barred by the Discretionary Function Exception to the FTCA .................... 12

CONCLUSION .............................................................. 16

## **TABLE OF AUTHORITIES**

**CASES**                                                                            **PAGE**

Andrews v. United States,
    121 F.3d 1430 (11th Cir. 1997) .................................... 14

Berkovitz v. United States,
    486 U.S. 531 (1988) .......................................... 13

Blaber v. United States,
    332 F.2d 629 (2d Cir. 1964) ..................................... 14

Broussard v. United States,
    989 F.2d 171 (5th Cir. 1993) .................................. 7, 9

Burke v. United States,
    No. 96 Civ. 2470 (LBS), 1996 WL 671151 (S.D.N.Y. Nov. 19, 1996) ............ 14

Carrillo v. U.S,
    5 F.3d 1302 (9th Cir. 1993) ....................................... 7

Carter v. United States, ,
    96 Civ. 9139, 1998 WL 744009 (S.D.N.Y. Oct. 26, 1998) ..................... 13

Costa v. United States,
    845 F Supp. 64, 68 (D.R.I. 1994) .................................... 5

Cuocco v. Fed. Bureau of Prisons,
    No. 98 Civ. 9009 (WHP), 2003 WL 22203727 (S.D.N.Y. Sept. 22, 2003) .......... 13

Dalehite v. United States,
    346 U.S. 15 (1953) ........................................... 13

Durplan v. Harper,
    188 F.3d 1195 (10th Cir. 1999) ..................................... 5

Fisko v. U.S. General Services Admin.,
    395 F. Supp. 2d 57 (S.D.N.Y 2005) .................................. 4

Hentnik v. U.S.,
    No. 02 Civ. 9498 (DC), 2003 WL 22928648 (S.D.N.Y. Dec.10, 2003) ......... 4, 14

Kirchmann v. United States,
    8 F.3d 1273 (8th Cir. 1993) ................................. 13, 14, 15

Kramer v. U.S.,
    843 F. Supp. 1066 (E. D. Va. 1994) ................................ 4, 6, 7, 9

Layton v. United States,
    984 F.2d 1496 (8th Cir. 1993) ........................................ 14

Lurch v. U.S,
    719 F.2d 333 (10th Cir. 1983) ........................................ 3, 4

MacDonald v. U.S.,
    807 F. Supp. 775 (M.D. Ga. 1992) ................................ passim

Taracido v. U.S.,
    93 Civ. 8266, 1995 WL 217525 (S.D.N.Y. April 12, 1995) .............. 9, 10

Tonelli v. United States,
    60 F.3d 492 (8th Cir. 1995) ........................................ 14

United States v. Gaubert,
    499 U.S. 315 (1991) ................................................. 13

United States v. Muniz,
    374 U.S. 150 (1963) ................................................. 12

United States v. Varig Airlines,
    467 U.S. 797 (1984) ........................................... 12, 14, 15

Vasquez v. United States,
    No. 81 Civ. 7844 (KTD), 1994 WL 268242 (S.D.N.Y. June 15, 1994) .... 14

Vickers v. United States,
    228 F.3d 944 (9th Cir. 2000) ........................................ 14

Williams v. U.S.,
    03 Civ. 9909, 2007 WL 951382 (S.D.N.Y. Mar. 22, 2007) .............. 8, 9

**STATUTES**

42 U.S.C. § 233(g)-(n) ................................................. 11

38 U.S.C. § 1710 ........................................................ 4

28 U.S.C. § 2680(a) .................................................... 12

38 U.S.C. § 4114 ................................................................. 5

38 U.S.C. § 8153 ............................................................. 5, 11

38 U.S.C.A. § 8153 (a)(1) ...................................................... 11

42 U.S.C. § 425b .............................................................. 11

Fed. R. Civ. P. 12(b)(1) ......................................................... 2

## PRELIMINARY STATEMENT

Defendants (collectively, the "Government"), by their attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of the Government's motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Because plaintiff has failed to establish that defendants Sterling, Fronton and Fine are employees of the United States, rather than independent contractors, the Court should grant the Government's motion. Moreover, plaintiff's claim for negligent hiring or supervision of Sterling, Fine, and Fronton must be dismissed because such a claim is barred by the FTCA's discretionary function exemption.

## ARGUMENT

### I. Plaintiff Has Failed to Demonstrate that Sterling, Fronton, and Fine Were Employees of the Government Rather than Independent Contractors

Plaintiff's argument that "pursuant to the terms of the contract, the VA controlled, supervised and directed nearly every aspect of the primary and preventative care" provided by CBOC physicians like Fronton and Fine, see Plaintiff's Memorandum of Law in Opposition to Defendants' Motion ("Pl. Opp.") at 2, is wholly without merit.

#### A. The Contract Provisions Relied on By Plaintiff Do Not Show that Sterling or the Doctors Were Subject to the Day-to-Day Control of the VA

Plaintiff mischaracterizes the terms of the Contract when he asserts that the Contract shows that the VA controlled the day-to-day operations of Sterling, Fronton, or Fine. First, plaintiff argues that the VA controls the doctors' day to day activities by "explicitly limit[ing]" the CBOC physician's duties to "providing primary and non-emergent healthcare exclusively." See Pl. Opp. at 18. To the contrary, the Contract's terms do not limit the CBOC doctors'

2

primary care duties. Rather in the section entitled "Scope of Work," the Contract states that primary care <u>includes</u> "medical evaluation, diagnosis, and medically necessary treatment of physiological and pathological conditions not requiring referral or inpatient hospital services." <u>See</u> Malott Decl., Exh. A, Part 1, 2, A. Sterling's duties under the Contract are broad: "care is directed toward health promotion and disease prevention, management of <u>acute and chronic medical conditions</u>," and "appropriate referral to speciality care." <u>Id.</u> (emphasis added). Indeed, the Contract provides that as part of its preventative health care program, Sterling's responsibilities include screening for certain cancers. <u>Id.</u>, Part 2, D. Thus, plaintiff's argument that the diagnosis and treatment of plaintiff's prostate cancer would have been the responsibility of the VA, not the Sterling doctors, does not find support in the Contract. In addition, the Contract states that Sterling shall be responsible for the <u>management and continuity of health care</u> for all enrolled patients through the following <u>minimum</u> functions. <u>Id.</u>, Part 1, 2.B (emphasis added). The fact that the Sterling doctors have the ability under the Contract to refer patients to the VA for more specialized services, if required, does not mean, as plaintiff states, that the VA oversees the day-to-day operations of the doctors or that the care provided by Sterling's doctors is "closely and strictly monitored by the VA." <u>See</u> Pl. Opp at 20.

Likewise, contrary to plaintiff's suggestion, <u>see</u> Pl. Opp. at 21, the mere fact that screening for certain diseases must be performed in accordance with VA and other expert groups' guidelines, does not render doctors Fronton and Fine employees of the VA. <u>See, e.g.,</u> <u>Lurch v. U.S</u>, 719 F.2d 333, 338, n.9 (10th Cir. 1983) (requiring contractor to conform to VA rule and regulations and to see every VA patient requiring neurological care did not transform contractor into employee); <u>Fisko v. U.S. General Services Admin.</u>, 395 F. Supp. 2d 57, 62 (S.D.N.Y 2005) ("The retention of a right to inspect the progress of a contractor's project or the

3

reservation of broad supervisory powers to control a contractor's compliance with the contract's specifications does not establish the agency relationship necessary for FTCA jurisdiction over the Government."); Hentnik v. U.S., No. 02 Civ. 9498 (DC), 2003 WL 22928648, at *4 (S.D.N.Y. Dec. 10, 2003). Likewise, the fact that the CBOC's medical records are the property of the VA and that medical record documentation must be consistent with VA Medical Center documentation requirements, see Malott Decl, Exh. A, Part 1, P, does not make doctors Fronton and Fine VA employees. See e.g., Kramer v. U.S. 843 F. Supp. 1066, 1071 (E. D. Va. 1994) (doctors were independent contractors not government employees despite contract provisions stating that government owned and controlled medical records used in treating patients, clinic doctors were required to use government forms and follow government protocols in filling out charts, and clinic doctors did not maintain any separate medical records).

Plaintiff's suggestion that the VA "exercises significant control over the CBOC physicians' patient load" is equally meritless. See Pl. Opp. at 24. Contract provisions stating that the VA may determine the eligibility of patients to be treated by Sterling do not translate into VA control over the doctors' patient load, appointments, or supervision of their patients. The VA's obligation to provide medical care to certain eligible individuals is prescribed by statute. See 38 U.S. C. § 1710 (describing eligibility requirements for patients of the VA). The Contract contains no provisions requiring the Sterling doctors to see patients at certain times, or monitoring their appointments. See, e.g., Lurch, 719 F.2d at 338 n.9 (requiring contractor to see every VA patient requiring neurological care did not transform contractor into employee).[1]

---

[1] Plaintiff's reliance on Costa v. United States, 845 F Supp. 64, 68 (D.R.I. 1994), is misplaced. See Pl. Opp. at 25. First, in Costa, the doctor whose employment status was at issue had been directly hired by the VA pursuant to 38 U.S.C. § 4114 (as amended, 38 U.S.C. § 7405), a statute that authorizes the VA to contract directly with physicians on a temporary basis. See 38

Plaintiff's argument that pursuant to the Contract, the CBOC physicians "do not set their own timetables for patient appointments" and that the VA controls these administrative functions is simply inaccurate and ignores the relevant provisions of the Contract. See Pl. Opp. at 26. The Contract provision on which plaintiff relies simply states that the VA standards require access to the CBOC within seven days for established patients and 30 days for new patients. See Malott, Decl., Exh. A, Part 2, A. Plaintiff ignores the Contract provisions which state that Sterling is responsible for providing "all administrative functions" see Part 1, (d), and "sufficient support staff to conduct daily business in an orderly manner" including a medical director and provider staff. The Contract contains no provisions stating that the VA Medical Center makes appointments for CBOC physicians. A requirement in the Contract that patients have access to the CBOC does not render the CBOC physicians employees of the VA. See Durplan v. Harper, 188 F.3d 1195, 1201-02 (10th Cir. 1999) (concluding that requirement that contractor attend Air Force clinic at designated hours and use government equipment and space did not convert contractor into employee).

Finally, the mere fact that the CBOC doctors' credentials were subject to review by the VA does not mean that the VA was the employer or responsible for the hiring or firing decisions relating to these physicians. See e.g. Kramer v. U.S., 843 F. Supp. 1066, 1071 (E.D.Va. 1994)

---

U.S.C. § 4114. In contrast, the Contract at issue in this case was between the VA and Sterling pursuant to an entirely different statutory framework. See 38 U.S.C. § 8153. Unlike in Costa, the VA never negotiated a contract directly with Drs. Fronton and Fine, but was furnished their services pursuant to a contract with Sterling. Second, Costa is inapposite because the doctor in that case, unlike Drs. Fronton and Fine, was paid directly by the VA. Costa, 845 F. Supp. at 8; Here, Drs. Fronton and Fine were paid by Sterling. See Brinkman, Decl., ¶¶ 4,5. Third, in Costa, the Chief of Surgical Services of the VA declared that he considered the doctor whose employment status was at issue to be the equivalent to a full-time employee; in this case, the Contract provisions and the declarations, confirm that Drs. Fronton and Fine were not considered to be employees of the VA.

5

(doctors' were independent contractors despite government's entitlement to review doctors' credentials); MacDonald v. U.S., 807 F. Supp. 775, 781 (M.D. Ga. 1992) (contract doctor was independent contractor where government permitted by contract to review doctor's credentials and qualifications and the subjective quality of that physician's performance); see Brinkman Decl., ¶ 5 ("Hiring decisions relating to Drs. Fronton and Fine were not made by the Miami VA Medical Center).

> B. The Contract Provisions and Declarations Show that Sterling, Fine and Fronton Were Not Government Employees

The terms of the Contract and the facts set forth in the Governments' declarations make plain that Sterling, and Drs. Fronton and Fine were not Government employees. First, the Contract explicitly states that the VA does not control the doctors' medical judgment or treatment. Specifically, the VA retained no control over the "professional aspects of the services rendered . . . including the Contractors or health care providers medical judgment, diagnosis, or specific medical treatments." See Malott Decl., Exh A., Addendum to 52.212-4 (852.237-7) (a), at 30. The VA did not hire or fire these doctors, nor did it pay their salaries or provide them with any benefits. See Brinkman Decl, ¶¶ 4, 5. Likewise, the VA did not provide these doctors with liability insurance, see Malott Decl., ¶¶ 11, 12, or provide facilities, equipment, services, or administrative support to the doctors or Sterling. Id. ¶ 5; see, e.g., Kramer, 843 F. Supp. at 1072 ("In a case such as this, where a separate economic entity hires and pays the doctor's salary and provides insurance for the doctor, it seems clear that the government and the contractor intended that any liability should be borne by the separate entity and its employees).

Courts faced with similar circumstances and contract provisions have concluded that doctors providing care are independent contractors, not Government employees. See, e.g.,

6

MacDonald, 807 F. Supp. at 781 (doctor alleged to have committed malpractice at medical facilities of Air Force base was independent contractor rather than federal employee for purposes of FTCA); Kramer, 843 F. Supp. at 1066 (individual health care providers working at Air Force base were independent contractors rather than employees of United States); Carrillo v. U.S, 5 F.3d 1302, 1303 (9th Cir. 1993) (physician who contracted to provide pediatric care at Army hospital was not federal employee); Broussard v. United States, 989 F.2d 171, 176 (5th Cir. 1993) (emergency room physician who provided services at Army hospital was independent contractor, not federal employee).

In MacDonald, for example, the court found that the physician at the Air Force Base who allegedly failed to diagnose and treat plaintiff's hypothyroidism, high cholesterol and heart disease, was an independent contractor, not a Government employee, where the contract contained almost identical provisions to those here. As here, the contract in MacDonald expressly provided that services rendered by the contractor's employees were rendered in the capacity of independent contractor, not Government employee. MacDonald, 807 F. Supp at 779; (compare Malott Decl., ¶ 7). Likewise, in MacDonald, the contract required the contractor to maintain liability insurance of up to $1 million per incident, and the United States made direct payment to the contractor for its services not to the contractor's individual employees. Id., at 780; (compare Malott Decl.,¶ 11). As here, the contract in MacDonald contained certain quality control and credentialing provisions, id., at 780, (compare Malott, Exh. A,. Special Contract Requirements, 1, 2); however, the court held that these were not substantial enough to bring the doctor within the ambit of the FTCA. "The government may require the contractor to meet certain standards and may review the contractor's performance to ensure contract compliance

without transforming the contractor into a federal employee." Id. Finally, the contract in MacDonald contained the same provision as the Contract here, providing that the Government maintains no control over the physicians' medical judgments, diagnosis or specific medical treatments. Id.. Malott Decl., Exh A., Addendum to 52.212-4) (852.237-7) (a), at 30.

C. Williams and Taracido Are Distinguishable

Plaintiff incorrectly argues that the facts of Williams v. U.S., 03 Civ. 9909 (GEL), 2007 WL 951382 (S.D.N.Y. Mar. 22, 2007), are "strikingly similar" to the facts of this case. See Pl. Opp. at 13. Unlike the VA's contract with Sterling, however, the contract in Williams provided that "the services to be performed by the Contractor will be *under the direction of the Chief* [of the Bronx VA]." Williams, 2007 WL 951382, at *11. Thus, the court in Williams concluded that it was clear that the contract between Mt. Sinai and the Bronx VA "intended for [the doctor] to report to the Chief of the Bronx VA." Id. Here, no such provision exists. Indeed, Drs. Fronton and Fine were not required to report to anyone at the Miami VA regarding their clinical decisions, and the Contract required Sterling to hire its own medical director. See Malott Decl., ¶ 9, Exh. A Part 1, I (b). Moreover, in Williams, unlike here, "personnel assignments were subject to the approval of the Bronx VA, the VA controlled the doctor's work hours and vacation time, and where he worked and who he saw during those hours" Id. at *11-12. Here, the Contract contained no such provisions. Indeed, Sterling was responsible for providing all "medical facilities, medical equipment, and supplies . . . and all administrative functions" see Malott Decl., Exh. A, Part I, (d), (e), and Sterling was charged with the hiring, training, licensure, and competency of all of its personnel. Id., Part I, H, (1); "Special Contract Requirements:, 1, 2(a).

Plaintiff's contention that Taracido v. US, 93 Civ. 8266 (LLS), 1995 WL 217525 (S.D.N.Y. April 12, 1995), is "remarkably similar" is equally baseless. In Taracido, the court denied the motions of the doctor and the defendant contractor for summary judgment where one of the contracts at issue stated that doctor "will be working strictly under the guidance and control of the [Government] Hospital." Id. at *2. Here, to the contrary, the Contract provides that Sterling hire its own medical director to "oversee and be responsible for the proper provision of covered services to enrolled patients." Malott Decl., Exh. A, Part 1, I, (b). Moreover, all of the factors that the Taracido court concluded weighed in favor of finding that the doctors were independent contractors are present here. The court noted:

> Other facts, however, suggest that Dr. Reiber is not a government employee. The USMA/Medical Directions contract provides that Medical Directions retains control and supervision over the contract physician and requires Medical Directions to enforce rules relating to the contract physician. Medical Directions assumed liability for the acts of its employees and agents, a category into which the parties may or may not have contemplated Dr. Reiber would fall. *See Broussard v. United States,* 989 F.2d 171, 176 (5th Cir.1993) (contract physician not employee of United States because, *inter alia,* contractor which hired and paid him assumed liability for his actions and agreed to indemnify the United States). The USMA pays Medical Directions by the hour for the contract physician's services (without deducting taxes) and does not fix the amount paid to Dr. Reiber. *See Kramer,* 843 F.Supp. at 1070 ("Payment from the government to a health care entity which in turn compensates the individual health care provider on its own terms is an indicator of independent contractor status."). Medical Directions is responsible for the contract physician's malpractice insurance. *See MacDonald,* 807 F.Supp. at 779 (fact that government required contractor and its employees to provide their own malpractice insurance "is a strong indication that the party is an independent contractor rather than a federal employee under the FTCA"). Finally, Dr. Reiber deals with Medical Directions regarding absences.

Id. at *4. Thus, contrary to plaintiff's suggestion, the reasoning of Taracido supports a conclusion that Fronton and Fine are independent contractors, not Government employees.

9

D.     There is No Need For Additional Discovery Because the Other Medical Professionals Whose Names Appear on the Records are Not Government <u>Employees</u>

While plaintiff argues that additional discovery is needed to determine if any other individuals who saw or treated the plaintiff were employees of the VA, the evidence submitted with the Plaintiff's opposition brief and defendants Sterling, Fronton and Fine's Affirmation in Opposition to the Government's motion reveals that none of the individuals listed on the plaintiff's VA medical records were employees of the VA, with the exception of a dermatologist, Robert A. Snyder, and an information technology specialist, Joann D. Bass, who is no longer employed by the Miami VA Medical Center.  <u>See</u> Declaration of Sherri L. Plotkin, Exh. A; Defendants' Affirmation in Opposition ("Defs. Opp. Aff."), Exh. A; Reply Declaration of Larry J. Brinkman ("Brinkman Reply Decl."), ¶ 2.  Plaintiff's dermatological visits are not relevant to the allegations in the Complaint regarding defendants' alleged failure to diagnose and treat plaintiff's prostate cancer.[2]  The remainder of the individuals listed in these records were not employees of the VA.  Brinkman Reply Decl., ¶ 2.  These facts are consistent with the VA's contract with Sterling, which required Sterling to provide "health care providers, medical facilities, medical equipment and supplies . . . and all administrative functions . . . " and which gave Sterling the responsibility for "the administration and management" of all aspects of the contract. <u>See</u> Malott Decl., ¶ ¶ 5, 6.  Thus, additional discovery would not shed further light on

---

[2] Plaintiff's medical records reveal that Dr. Snyder saw plaintiff on January 19, 2003, December 24, 2003, March 4, 2004, and September 9, 2004, for follow-up visits relating to sun damage to his skin.  <u>See</u> Def. Opp. Aff., Exh. A, at 19, 22, 23, 25.  Joann D. Bass did not see plaintiff, but rather, entered an administrative comment into plaintiff's medical record on March 6, 2004. <u>Id.</u>, at 37.

10

the issue of whether Drs. Fronton, Fine, or anyone else who treated plaintiff during the relevant time period was an employee of the VA.[3]

Moreover, plaintiff contends that he needs additional discovery to determine whether "section 330 of the Public Health Service (PHS) Act (42 U.S.C. 425b) pursuant to the Federally Supported Health Centers Assistance Act ("FSHCCA") of 1992 and 1995" applies to the Deerfield Beach Community-Based Outpatient Clinic.[4] See Pl. Opp. at 4. The Deerfield Beach CBOC is not a federally funded health clinic pursuant to the FSHCAA, and therefore this section is not applicable to this case. The agency involved here is the VA which has contracted with Sterling pursuant to 38 U.S.C. § 8153[5] to manage its community based clinic. Thus, this provision rendering employees of a federally supported health center employees of the Government for purposes of tort liability is entirely inapplicable to plaintiff's case. Plaintiff's request for additional discovery should therefore be denied, or at the very least, stayed until the Court resolves the Government's motion to dismiss.

---

[3] While plaintiff seeks "a copy of the contract between Miami VA and Sterling for the years 2002, 2003 and 2004," see Pl. Opp. at 4, the Malott Declaration makes clear that the Contract provided with the Government's motion is the Contract that was in place for the relevant years. See Malott Decl., ¶ 3 ("The Contract contained renewal options for up to four yearly renewals. Each of those renewal options was exercised.").

[4] Pursuant to 42 U.S.C. § 233(g)-(n), the employees of federally supported health center are deemed to be employees of the United States for purposes of bringing civil actions against them for damages resulting from the performance of medical, surgical, dental or related functions.

[5] Pursuant to this section, "the Secretary may, when the Secretary determines it to be in the best interest of the prevailing standards of the Department medical care program, make arrangements, by contract or other form of agreement for the mutual use, or exchange of use, of health-care resources between Department health-care facilities and any health-care provider, or other entity or individual." 38 U.S.C.A. § 8153 (a)(1).

II.  **Plaintiff's Negligent Supervision and Hiring Claim Against the United States is Barred by the Discretionary Function Exception to the FTCA**

While it was not at all clear from the Complaint that plaintiff was raising a claim of negligent supervision or hiring by the VA, plaintiff has elaborated on that claim in his opposition brief. See Pl. Opp. at 28-34. To the extent that plaintiff seeks to hold the Government liable for negligently hiring or supervising Sterling or doctors Fronton and Fine, employees of Sterling, see Pl. Opp. at 28-34, such a claim is barred by the FTCA's discretionary function exemption. The "discretionary function" exception provides that no claims against the Government may lie if they are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Congress intended the discretionary function exception to "encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." United States v. Varig Airlines, 467 U.S. 797, 813–14 (1984). "The discretionary function exception . . . marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Id. at 808. The discretionary function exception further reflected a congressional concern that allowing the Government to be liable for discretionary acts "would seriously handicap efficient government operations." Id. at 814 (citing United States v. Muniz, 374 U.S. 150, 163 (1963)).

The Supreme Court's jurisprudence on the discretionary function exception has yielded a two-prong test for determining whether the exception applies. See United States v. Gaubert, 499 U.S. 315, 324–25 (1991). The first inquiry is whether the alleged conduct contravened a mandatory regulation. Id. at 324. "If the employee violates [a] mandatory regulation, there will

12

be no shelter from liability because there is no room for choice and the action will be contrary to policy." Id.; accord Berkovitz v. United States, 486 U.S. 531, 536 (1988). Here, no mandatory statute or regulation governs the CBOC's supervision of its employees and contractors.

The analysis therefore turns to the second prong, which considers whether the decisionmaking at issue is a question of judgment or discretion for the Government. See Dalehite v. United States, 346 U.S. 15, 35–36 (1953). This inquiry recognizes that "the purpose of the [discretionary function] exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Gaubert, 499 U.S. at 323. This consideration requires a court to consider whether "the action challenged . . . involve[d] the permissible exercise of policy judgment." Berkovitz, 486 U.S. at 537. There is a "presumption under the law . . . that when exercising discretion accorded to it, the government's actions will be 'grounded in policy.'" Kirchmann v. United States, 8 F.3d 1273, 1277 (8th Cir. 1993) (quoting Gaubert, 499 U.S. at 324).

It is well established that the Government's personnel decisions with respect to supervision are discretionary functions excluded from the scope of the FTCA. Indeed, the law is clear that "challenges to the personnel decisions of the United States are barred by the discretionary function exception to the FTCA." Cuocco v. Fed. Bureau of Prisons, No. 98 Civ. 9009 (WHP), 2003 WL 22203727, at *6 (S.D.N.Y. Sept. 22, 2003); see Carter v. United States, 96 Civ. 9139, 1998 WL 744009, at *4 (S.D.N.Y. Oct. 26, 1998) ("Courts have repeatedly held that the selection and supervision of contractors is a discretionary function, and thus cannot

result in governmental liability."); Burke v. United States, No. 96 Civ. 2470 (LBS), 1996 WL 671151, at *2 (S.D.N.Y. Nov. 19, 1996) (same).[6]

It also well established that the discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of individuals doing work on its premises. Andrews v. United States, 121 F.3d 1430, 1440 (11th Cir. 1997); see Kirchmann, 8 F.3d at 1277–78; Hentnik, 2003 WL 22928648, at *3. This is because matters regarding "employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995); see, e.g., Varig Airlines, 467 U.S. at 819-20 (decision on extent of government supervision constitutes exercise of "discretionary regulatory authority of the most basic kind"); Blaber v. United States, 332 F.2d 629, 631 (2d Cir. 1964) (decisions concerning "extent to which [agency] will undertake to supervise the safety procedures of private contractors" are "within the 'discretionary function' exception"); Moreno, 965 F. Supp. at 527 (method and extent of supervision of a contractor are "within the sound discretion of the Government"); Vasquez v. United States, No. 81 Civ. 7844 (KTD), 1994 WL 268242, at *3 (S.D.N.Y. June 15, 1994) (same); see also Kirchmann, 8 F.3d at 1277 ("If arguably based on policy considerations, both negligence in supervising a contractor and the failure to supervise a contractor are all included in the decisions protected by the discretionary function exception.").

---

[6] See also Vickers v. United States, 228 F.3d 944, 950–51 (9th Cir. 2000) (discretionary function exception barred plaintiff's claim that the Immigration and Nationalization Service negligently supervised and trained a detention officer); Kirchmann, 8 F.3d at 1276–77 (discretionary function exception barred plaintiffs' claims that the United States failed to properly supervise contractor's disposal of contaminated waste); Layton v. United States, 984 F.2d 1496, 1502–03 (8th Cir. 1993) (claim that Forest Service inadequately supervised performance of the work and compliance with safety regulations of contractors responsible for culling trees barred by discretionary function exception).

Discretionary determinations regarding the hiring of contractors to administer the CBOCs plainly are protected by the discretionary function exception. See Kirchmann, 8 F.3d at 1278 (observing that in enacting the discretionary function exception, "Congress accepted the possibility that government agencies would have to take 'certain calculated risks' in assessing 'the degree of confidence that might reasonably be placed in a given [contractor].'" (quoting Varig Airlines, 467 U.S. at 820)). Accordingly, the discretionary function exception shields the Government from liability for any claim by plaintiff that the Government was negligent in hiring or supervising Sterling, or its employees, Drs. Fronton and Fine.[7]

---

[7] The Government also moved in its opening brief to dismiss plaintiff's claim against the Bronx VA on the grounds that apart from alleging that he came under the care and treatment of the Bronx VA, plaintiff failed to raise any specific allegations of negligence against the Bronx VA or any doctors associated with that facility. Plaintiff now attempts to fashion a claim against the Bronx VA by alleging that following plaintiff's January 2005 visit to the Bronx VA in which an elevated PSA level was found, there was "another incomprehensible delay by the VA" before the performance of a biopsy on March 11, 2005. See Pl. Opp. at 7. The Government vigorously denies any allegation of delay or negligence on the part of the Bronx VA in treating the plaintiff, however, given the constraints of a motion to dismiss for failure to state a claim and the inability of the Government to provide the Court with materials outside the pleadings on such a motion, the Government anticipates filing a summary judgment motion at a later date to counter plaintiff's claim against the Bronx VA.

15

## CONCLUSION

For the foregoing reasons and for the reasons stated in the Government's moving brief, the Government's motion to dismiss the Complaint should be granted.

Dated: New York, New York
      October 10, 2007

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the Government

By: _____
ALLISON D. PENN (AP-3787)
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2725