```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
WILLIAM G. GIBBONS,

                Plaintiff,              OPINION

        -against-                       07 Civ. 2801 (MGC)


LEONARD FRONTON, D.O., STEVEN FINE,
M.D., STERLING MEDICAL CORPORATION,
DEPARTMENT OF VETERANS AFFAIRS and THE
UNITED STATES OF AMERICA,

                Defendants.

------------------------------------X

APPEARANCES:

        BARTON BARTON & PLOTKIN LLP
        Attorneys for Plaintiff
        420 Lexington Avenue
        New York, New York 10170

        By:  Thomas P. Giuffra, Esq.
             Sherri L. Plotkin, Esq.

        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
        Attorneys for Sterling Medical Associates, Inc.,
          Leonard Fronton, D.O., and Steven Fine, M.D.
        150 East 42nd Street
        New York, New York 10017

        By:  Michael J. Gudzy, Esq.

        MICHAEL J. GARCIA
        United States Attorney for the
          Southern District of New York
        86 Chambers Street
        New York, New York 10007

        By:  Allison D. Penn, Esq.
             Assistant United States Attorney
```

**Cedarbaum, J.**

William Gibbons sues Leonard Fronton, D.O., Steven Fine, M.D., and their employer, Sterling Medical Associates, Inc., for medical malpractice, lack of informed consent, and medical facility negligence.  Gibbons also asserts claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, against the Department of Veterans Affairs ("VA" or "the VA")[1] for the malpractice of Fronton, Fine, and Sterling and for negligent hiring and supervision of the doctors.  The United States moves to dismiss the claims for vicarious liability, negligent hiring, and negligent supervision pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.  Pursuant to Fed. R. Civ. P. 12(b)(6), the United States also moves to dismiss Gibbons' claims, if any, against the Bronx VA.  For the reasons that follow, the motions of the United States are granted.

                            **BACKGROUND**

In adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, a court may resolve disputed factual issues by reference to evidence outside

---

[1] "Section 2679(d)(1) of the Federal Tort Claims Act provides that when an individual federal employee is sued for tortious acts while acting within the scope of his duties, upon the Attorney General's certification, the United States is to be substituted as a defendant." Webb v. Smith, No. 97 Civ. 0787, 1997 WL 438794, at *2 (S.D.N.Y. Aug. 4, 1997).  Here, however, the United States denies that Fronton, Fine, and Sterling are federal employees, and there has been no certification.

the pleadings, including affidavits.  State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007).  The following facts are taken from the complaint and assumed to be true, or were presented in uncontested affidavits and exhibits.

Sterling Medical Associates, Inc. ("Sterling") runs three community-based outpatient clinics in Florida:  one in Deerfield Beach, one in Coral Springs, and one in Homestead.  Sterling staffs the clinics with its own employee physicians.

In March of 2001, the Miami VA entered into a contract with Sterling "in order to furnish the timely delivery of Primary/Preventive Healthcare Services for veteran beneficiaries in their local communities."  (VA Miami Community Based Primary Care Clinic Solicitation/Contract, dated March 22, 2001 ("Contract" or "the Contract") at 9, ¶ I(1)(a).)  Under the Contract, Sterling was required to "provide primary/preventive care medical services in a clinical environment to veterans in the geographic locations covered by this contract."  Id. at 9 ¶ I(2)(A).  Sterling's clinics "shall provide primary care as a point of entry into the health care system for non-emergency care," and its physicians were required to "arrange for referral to VA when more specialized services are medically indicated."  Id. at 10 ¶ I(B)(3).  Sterling provided its own medical facilities, equipment, supplies, and staff.  The VA provided medications, processed all laboratory testing, controlled all

patient medical records through its VISTA electronic medical record system, and retained the sole authority to enroll and determine eligibility of patients to be treated by Sterling.

From November of 2001 through September of 2004, Gibbons was treated at Sterling's Deerfield Beach clinic by Dr. Fronton and Dr. Fine. Among other things, medical tests revealed that Gibbons had prostate-specific antigen ("PSA") levels of 5.52 on November 21, 2001, 7.07 on September 10, 2002, 6.98 on December 10, 2002, and 7.06 on October 1, 2003. Gibbons moved to New York in late 2004. At the Bronx VA, he was diagnosed with and treated for prostate cancer.

Gibbons alleges that Sterling and its doctors treated him negligently by failing, among other things, to recommend further diagnostic tests for prostate cancer when his blood tests showed elevated PSA levels. Gibbons seeks $10 million in damages on three counts, plus punitive damages, for diminished life expectancy, chronic pain, emotional distress, and other related complications.

## DISCUSSION

**I. Rule 12 Standards**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A

4

plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks and brackets omitted). In deciding a question of subject matter jurisdiction, the court is not limited to the face of the complaint. "[W]here evidence relevant to the jurisdictional question is before the court, 'the district court ... may refer to [that] evidence.'" Robinson v. Government of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001) (quoting Makarova, 201 F.3d at 113).

By contrast, a court adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "must accept the allegations contained therein as true and draw all reasonable inferences therefrom in favor of the plaintiff." Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC, 298 F.3d 136, 140 (2d Cir. 2002). Nevertheless, a complaint must meet "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

5

formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (quotations marks and brackets omitted).

**II. Vicarious liability**

The Federal Tort Claims Act "is a limited waiver of sovereign immunity making the Federal Government liable to the same extent as a private person for certain torts of employees of the government acting within the scope of their employment." Leone v. United States, 910 F.2d 46, 48 (2d Cir. 1990). In the FTCA, the Government waives its immunity for negligent acts or omissions of any of its employees acting within the scope of their office or employment, and thus provides subject matter jurisdiction to the federal courts in suits against such employees. 28 U.S.C. § 1346(b)(1).

"Employee of the government" under the FTCA is defined as "officers or employees of any federal agency, . . . and persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671. "Federal agency," in turn, is defined to include "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." 28 U.S.C. § 2671

(emphasis added).  Therefore, the Government's vicarious liability turns on whether, under the FTCA, Gibbons' doctors are independent contractors or employees of the Government.

It is not contested that Dr. Fine and Dr. Fronton were employees of Sterling.  But the status of Sterling is contested.  Sterling's contract with the VA defined Sterling as an independent contractor.  However, the terms of a contract are not dispositive as to whether a party is an employee of the Government for purposes of the FTCA.  <u>Williams v. United States</u>, No. 03 Civ. 9909, 2007 WL 951382, at *10 (S.D.N.Y. March 22, 2007).  The language of the contract notwithstanding, a court will determine a party to be an employee of the Government for the purposes of the FTCA "if the Government enjoys the power to control the detailed physical performance of the contractor, ... <u>or</u> if the Government in fact supervises the day-to-day operations" of the contractor.  <u>B & A Marine Co. v. Am. Foreign Shipping Co.</u>, 23 F.3d 709, 713 (2d Cir. 1994) (emphasis in original; internal quotation marks and citations omitted).  What is important is "not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government."  <u>Leone</u>, 910 F.2d at 50.  A contractor is not considered to be an employee if the government agency "acts generally as an overseer."  <u>Id</u>.  A contractor is considered to be an employee

only if the government agency "manage[s] the details of [the contractor's] work or supervise[s] him in his daily duties."  Id.

In arguing that Sterling, Dr. Fronton, and Dr. Fine are employees of the Government, Gibbons relies on Williams v. United States, supra, and Taracido v. United States, No. 93 Civ. 8266, 1995 WL 217525 (S.D.N.Y. Apr. 12, 1995).  In Williams, medical services were to be performed under the direction of the Chief of the Bronx VA; the "Bronx VA arguably controlled not only the end result of the medical care provided by [the doctor], but the manner and method of reaching the result as well."  2007 WL 951382, at *12 (internal quotation marks omitted).  In Taracido, the doctor "work[ed] strictly under the guidance and control of the Keller Army Community Hospital and ... receive[d] direction from the Director of Primary Care Services or his designate, regarding clinical duties to be performed."  1995 WL 217525, at *4 (internal quotation marks omitted).

Gibbons argues that the VA exerts sufficient supervision over Sterling and its doctors because the VA defines Sterling's physicians as a "point of entry" into the VA's non-emergency health-care system; limits the scope of the physicians' duties to primary and preventive care; strictly controls and monitors referrals made by Sterling to specialist doctors; mandates the timing of certain screening tests, such as tests for hypertension and breast cancer; processes all patient-related laboratory

8

testing; and retains exclusive control over patient records. None of these facts, taken as true, shows day-to-day supervision of the medical care provided by Sterling's physicians. Furthermore, the VA does not hire Sterling's physicians, or maintain their personnel folders. (Declaration of Larry Joseph Brinkman, ¶ 5.) When the VA brought in Sterling, it decided to outsource primary and preventive care, subject to minimum requirements such as periodic screening tests, while retaining control over other aspects of veterans' medical care, such as specialist care, lab work, and patient records.

Gibbons also argues that day-to-day control is shown by the VA's establishment of clinical guidelines, policies regarding delivery of services, and procedures to review patient satisfaction; and by the VA's requirement that physician qualifications be subject to review by, among other entities, the VA Professional Standards Board. However, a contractor does not become an employee for FTCA purposes simply because it "must comply with federal regulations and apply federal standards." Leone, 910 F.2d at 50. There is no indication that the VA guidelines are detailed in any way. On the contrary, the Contract states that the VA "retains no control over professional aspects of the services rendered," such as the "health-care providers['] professional medical judgment, diagnosis, or

specific medical treatments."  (Contract at 30, ¶ II(852.237-7)(a).)

All of Gibbons' allegations are consistent with general oversight and the setting of certain minimum levels of care. Nothing alleged by Gibbons or included in the affidavits shows that the VA directly oversaw, on a day-to-day basis, any of the medical decisions of Sterling's physicians.  Nor did the VA oversee Dr. Fronton's or Dr. Fine's interpretations of Gibbons' PSA tests, or the decision not to follow up with further testing or a biopsy.

Gibbons has not shown governmental supervision of Sterling and Sterling's physicians on a daily basis, and therefore has not shown that sovereign immunity has been waived with respect to the vicarious liability claims against the United States.

### III. **Negligent hiring and supervision**

Gibbons alleges that the VA negligently hired and negligently supervised the doctors who failed to act on the lab reports indicating Gibbons' elevated PSA levels.  The Government argues that its decision to use an outside provider for medical care falls under the discretionary function exception to the waiver of sovereign immunity contained in the FTCA.

A significant limitation on the waiver of sovereign immunity set out in the FTCA is the discretionary function exception,

which provides that Congress's authorization of tort suits against the United States

> shall not apply to ... [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). The exception reflects Congress' decision, supported by the principle of separation of powers, to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 814.

In order for negligent conduct to come within the discretionary function exception, "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (quoting United States v. Gaubert, 499 U.S. 315,

322, 323 (1991), and Berkovitz v. United States, 486 U.S. 531, 536, 537 (1988)).

It is not the case that, under this two-pronged examination, all claims for negligent hiring or supervision are barred by the discretionary function exception; "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish," United States v. Gaubert, 499 U.S. 315, 325 n.7 (1991). In order for a claim of negligent hiring or supervision to be barred by the discretionary function exception, the decision to hire or supervise the negligent employees must be "grounded in considerations of public policy or susceptible to policy analysis." Coulthurst, 214 F.3d at 109 (internal quotation marks omitted).

In Gaubert, the largest shareholder of a savings and loan association sued the United States to recover the lost value of his shares. 499 U.S. at 319-20. The Federal Home Loan Bank Board ("FHLBB"), a federal regulatory agency, was concerned that the shareholder, who was also the chairman of the board, had a conflict of interest with regard to a proposed merger. Id. at 319. The agency threatened to close the savings and loan association "unless its management and board of directors were

replaced." Id. A new board of directors was selected by the agency; under its new management, however, the savings and loan association achieved a negative net worth. Id. at 320. The shareholder sued the United States, alleging, among other things, that the FHLBB negligently supervised the board of directors. First, the Court found that the FHLBB had the discretion to supervise the savings and loan association. Id. at 331. Second, the Court found that the exercise of this discretion, in replacing the board of directors, was done "to protect the [Federal Savings and Loan Insurance Corporation's] insurance fund; thus it cannot be disputed that this action was based on public policy considerations." Id. at 332. Because the government agency's actions were within its discretionary powers, and because the agency's exercise of discretion was grounded in a policy choice, the Government was immune from suit.

Similarly, in this case, the VA has acted within its discretion, and its exercise of discretion reflects policy considerations. Title 38 of the United States Code, which covers veterans' affairs, explicitly contemplates the outsourcing of medical care. "It is the purpose of this subchapter to strengthen the medical programs at Department facilities and improve the quality of health care provided veterans under this title by authorizing the Secretary to enter into agreements with health-care providers in order to share health-care resources

with, and receive health-care resources from, such providers . . . ." 38 U.S.C. § 8151.  "To secure health-care resources which otherwise might not be feasibly available, or to effectively utilize certain other health-care resources, the Secretary <u>may, when the Secretary determines it to be in the best interest of the prevailing standards of the Department medical care program</u>, make arrangements, by contract or other form of agreement for the mutual use, or exchange of use, of health-care resources between Department health-care facilities and any health-care provider, or other entity or individual."  38 U.S.C. § 8153(a)(1) (emphasis added).  The VA's decision to enter a contract with an outside health-care provider is clearly within the discretion granted to the VA in § 8153(a)(1).  The first prong of Coulthurst, that the agency decision must "involve an element of judgment or choice ... not compelled by statute or regulation," is therefore satisfied.  214 F.3d at 109 (internal quotation marks omitted).

The VA entered into the contract with Sterling "in order to furnish the timely delivery of Primary/Preventive Healthcare Services for veteran beneficiaries in their local communities." (Contract at 9, ¶ I(1)(a).)  Under the contract, Sterling is required to

> provide primary/preventive care medical services in a clinical environment to veterans in the geographic locations covered by this contract.  Primary care includes medical evaluation, diagnosis and medically necessary treatment of physiological and pathological

14

>           conditions not requiring referral or in-patient
>           hospital services....  Care includes medical services
>           usually provided by Internal Medicine or Family
>           Practice Physicians as well as ancillary services
>           necessary to meet the above requirements.

Id. at 9, ¶ I(2)(A).

In other words, the VA contracted with Sterling for the provision of convenient and accessible primary and preventive care in veterans' local communities.  Such a decision clearly falls "within the purview of the policies behind the statutes" governing the VA, Gaubert, 499 U.S. at 333, which authorize the VA to "improve the quality of health care provided veterans ... by ... enter[ing] into agreements with health-care providers," 38 U.S.C. § 8151.  The VA's hiring and supervision of Sterling, to the extent there was any supervision, satisfied the second prong of the Coulthurst analysis, in that the decision to contract with Sterling was "grounded in considerations of public policy." Coulthurst, 214 F.3d at 109 (internal quotation marks omitted).

Accordingly, the discretionary function exception applies to the VA's contract with and supervision of Sterling.  The Government is insulated from Gibbons' negligent hiring and supervision claims by the discretionary function exception to the waiver of sovereign immunity in the FTCA.

**IV. Claims against the Bronx VA**

Gibbons' complaint mentions the Bronx VA in passing: "WILLIAM GIBBONS has been a patient of and under the care and treatment of the defendants VA and THE UNITED STATES OF AMERICA at different VA facilities, including the aforesaid [Miami VA] and at the Bronx Veterans Administration Medical Center." (Complaint, ¶ 30.) The Government moves to dismiss any claims of Gibbons against the Bronx VA, for failure to state a claim upon which relief can be granted.

Aside from the bare statement that Gibbons was treated at the Bronx VA, the complaint contains no facts regarding treatment of any sort at the Bronx VA, names no physicians at the Bronx VA, and asserts no misconduct by any employee at or connected with the Bronx VA. At oral argument, counsel for plaintiff was asked, "Isn't it the Bronx VA that correctly diagnosed this problem?" (Transcript of October 16, 2007 Hearing at 2.) Counsel responded, "Your Honor, yes, that is true." (Id.)

To survive a 12(b)(6) motion to dismiss, a complaint must contain enough factual allegations "to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965. Because Gibbons' complaint is devoid of factual allegations regarding the Bronx VA, the 12(b)(6) motion of the United States is granted.

**CONCLUSION**

For the foregoing reasons, the motions to dismiss defendants VA and the United States are granted.

SO ORDERED.

Date:   New York, New York
        February 6, 2008

                                    S/_____
                                         MIRIAM GOLDMAN CEDARBAUM
                                         United States District Judge