UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
WILLIAM G. GIBBONS,

                    Plaintiff,              OPINION

        -against-                           07 Civ. 2801 (MGC)


D.O. LEONARD FRONTON AND STERLING
MEDICAL CORPORATION,

                    Defendants.

--------------------------------X

APPEARANCES:

        BARTON BARTON & PLOTKIN, LLP
        Attorneys for Plaintiff
        420 Lexington Avenue
        New York, NY 10170

        By:  Sherri L. Plotkin, Esq.
             Thomas Peter Giuffra, Esq.

        FURMAN KORNFELD & BRENNAN LLP
        Attorneys for Defendants
        545 Fifth Avenue
        New York, NY 10017

        By:  Neil S. Kornfeld, Esq.
             Kathryn C. Collins, Esq.


**Cedarbaum, J.**

        Plaintiff William Gibbons sues Dr. Leonard Fronton and

Sterling Medical Corporation for medical malpractice, lack

of informed consent and medical facility negligence.

Defendants move to dismiss on the ground that the claims are

barred by the applicable New York statute of limitations. An

1

evidentiary hearing was held on March 10, 2009, on the issue of whether the statute of limitations should be equitably tolled.

Plaintiff moves under 28 U.S.C. § 1406(a) to transfer the case to the Southern District of Florida, where he argues that his claim would not be time-barred under Florida's longer statute of limitations.  For the reasons set forth below, plaintiff's motion to transfer the case to the Southern District of Florida is granted. In light of the transfer, defendants' motion to dismiss for failure to meet the statute of limitations in New York is moot.

**BACKGROUND**

## I. Gibbons is Treated at the Deerfield Beach CBOC

Plaintiff William Gibbons was living in Florida in 2001.  He affirms that at that time, he called the Miami Veterans Administration ("VA") to find out where he could receive VA medical services because he is a veteran and because his insurance plan was accepted by VA hospitals, clinics and doctors.  The Miami VA referred him to the Deerfield Beach community based outpatient clinic ("CBOC") for outpatient medical treatment, including annual physical examinations.  The Deerfield Beach CBOC is operated and staffed by defendant Sterling Medical Corporation.

Defendant Sterling Medical Corporation does business in Florida.

Gibbons began going to the Deerfield Beach CBOC for routine physical examinations in November of 2001 and continued to be treated there through September of 2004. Gibbons was treated by Dr. Fronton at the Deerfield Beach CBOC during this time.  Dr. Fronton is a resident of Florida and an employee of Sterling Medical Corporation.

Gibbons alleges that defendants failed to diagnose him timely and properly with prostate cancer.  According to the medical records submitted by the parties, Gibbons was evaluated by Dr. Fronton at the CBOC on October 3, 2003. Dr. Fronton found that Gibbons had a minimally enlarged prostate and that his PSA levels were elevated to 7.06.  Dr. Fronton wrote in his progress notes that "[i]f his PSAs are elevated at 7 or above again, I will give him referral to urology."

According to the medical records submitted by both parties, Gibbons was last treated at Sterling Medical Center in connection with his symptoms related to prostate cancer on August 5, 2004.  On that date, Gibbons reported blood in his urine and underwent a urinanalysis at the CBOC.

Gibbons moved to New York in October of 2004.  In January of 2005, Gibbons went to the Bronx VA Hospital for

treatment of a cold.  During that visit, his PSA levels were checked and found to be 10.22.  On March 11, 2005, a biopsy was performed, revealing that Gibbons had prostate cancer.

## II. Gibbons Brings a Medical Malpractice Action: First Against the VA, Then Against Individual Doctors and Sterling Medical Corporation

In June of 2006, Gibbons retained Barton, Barton & Plotkin, LLP to represent him in a medical malpractice action.  Gibbons' attorney, Sherri Plotkin, decided that the VA was the proper defendant by interviewing Gibbons and searching the internet to determine the nature of the affiliation between the Deerfield Beach CBOC and the Miami VAMC.  The search for the Deerfield Beach CBOC turned up online links to the VA's website, which listed the Deerfield Beach CBOC as one of several VA clinic locations.  The search also indicated that the building which houses the Deerfield Beach CBOC has a sign which reads "VA Clinic" on the front of it.  In addition, according to Gibbons, all medical bills, medical records and lab test results that he received in connection with his treatment at the Deerfield Beach CBOC between 2001 and 2004 were printed on VA letterhead.

Having decided that the VA was the proper defendant, Plotkin determined that before suing in court, Gibbons must exhaust his administrative remedies pursuant to 28 U.S.C. §

2675(a), the Federal Tort Claims Act ("FTCA").  On July 10, 2006, an Administrative Tort Claim Form (SF-95) for Damage, Injury or Death was filed on Gibbons' behalf with the Department of Veteran's Affairs ("VA").  On July 19, 2006, regional counsel for the VA located in Brooklyn, New York sent a letter to Plotkin, acknowledging receipt of the SF-95 claim.  Thereafter, Gibbons forwarded his medical records and other documentation to the VA.

Also in July of 2006, Plotkin received correspondence from the Department of Veterans Affairs, VA Medical Center, Miami, Florida, enclosing a copy of the Deerfield Beach CBOC medical records for Gibbons. Plotkin reviewed the documents and noted that each page of the records was stamped "Printed at Miami VAMC."

According to Plotkin's testimony, on or around January 9, 2007, she received a call from Kathy Merkle, legal counsel on behalf of the VA.  Ms. Merkle testified that she does not remember this telephone call.  According to Plotkin, Merkle advised her that the VA was investigating Gibbons' claim but had not yet made a determination as to liability.  However, Merkle stated that she expected to make a finding of liability.  Because the New York office only had authority to settle claims up to a maximum of $100,000, any claims with greater value would be transferred to

Washington, D.C.  Merkle stated that although the New York office had not yet made a final determination, she anticipated that liability would be found in an amount greater than $100,000, and that the claim would be transferred to Washington.

In early February of 2007, Plotkin received a second telephone call from Merkle.  During this call, which Merkle remembers, Merkle advised Plotkin that the Deerfield Beach CBOC was run by Sterling Medical Corporation, an independent contractor.  Therefore, the VA bore no liability for the alleged malpractice.  Merkle had not yet obtained the contract between Sterling and the VA.

Gibbons filed his claims for medical malpractice, lack of informed consent and medical facility negligence against Dr. Fronton, Dr. Fein, Sterling Medical Corporation, the VA and the United States of America in federal court on February 16, 2007.

### III. Procedural History

On February 6, 2008, the VA and the United States of America were dismissed from this action.  See Gibbons v. Fronton, 533 F. Supp. 2d 449 (S.D.N.Y. 2008). Because Sterling Medical Corporation was found to be an independent contractor, the United States had not waived sovereign immunity with respect to vicarious liability claims.  Id. at 454.  In addition, because the discretionary function exception to the FTCA was found to apply to the VA's contract with Sterling, the United States was held to be insulated from Gibbons' negligent hiring and supervision claims.  Id. at 456.  All claims against the Bronx VA were dismissed under Fed. R. Civ. P. 12(b)(6) because the complaint is devoid of factual allegations against the Bronx VA.  Id. at 457.

On September 1, 2009, Gibbons voluntarily dismissed all claims against Dr. Fein.

### ANALYSIS

### I. Statute of Limitations

Gibbons' complaint in this court does not meet the statute of limitations for his malpractice and lack of informed consent claims.

Because this is a diversity case, New York's choice of law rule applies. BBS Norwalk One, Inc. v. Raccolta, Inc.,

60 F. Supp. 2d 123, 128—129 (S.D.N.Y. 1999)(citing <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487 (1941)).
Under New York's choice of law rule, an action based upon a cause of action accruing outside New York cannot be commenced after the expiration of the statute of limitations of either New York or the state where the cause of action accrued.  N.Y. C.P.L.R. § 202.  This means that the shorter statute of limitations governs.  <u>Gordon & Co. v. Ross</u>, 63 F. Supp. 2d 405, 407 (S.D.N.Y. 1999).

The statute of limitations in New York for medical malpractice is two and a half years, and begins to run on the date of last treatment for the same illness, injury or condition which gave rise to the claim. N.Y. C.P.L.R. § 214(a).  The statute of limitations for lack of informed consent is also two and a half years. <u>Murriello v. Crapotta</u>, 51 A.D.2d 381, 383 (N.Y. App. Div. 2d Dep't 1976). The statute of limitations in New York for medical facility negligence is three years.  N.Y. C.P.L.R. § 214.

Under Florida law, a medical malpractice action must be commenced 2 years "from the date of discovery of the injury" and within the statute of limitations (4 years from the date of the incident).  Fl. Stat. § 95.11(4)(b).  The same statute of limitations applies to lack of informed consent, which is treated as a subspecies of medical malpractice.

Sistrunk v. Hoshall, 530 So. 2d 935, 936 (Fla. Dist. Ct.
App. 1988). The statute of limitations in Florida for
medical facility negligence is three years.  Fl. Stat. §
95.11(3)(a).

Defendants argue that they treated Gibbons for the last
time on October 3, 2003.  Gibbons' complaint alleges
September 9, 2004, as the last date of treatment.  However,
the medical records submitted by both parties[1] show that
Gibbons visited the Deerfield Beach CBOC on August 5, 2004,
complaining of blood in his urine.  After this date, the
records show that his only visit to the Deerfield Beach CBOC
was on September 9, 2004, to see a dermatologist for
problems unrelated to his prostate cancer.

Thus, August 5, 2004 was Gibbons' date of last
treatment for symptoms related to his prostate cancer.[2]
Gibbons discovered his injury on March 11, 2005.

Taking August 5, 2004 as the date of last treatment,
the New York statute of limitations for Gibbons'' medical

---

[1] Although defendants moved under Rule 12(b)(6) to dismiss, because they
attached plaintiff's medical records and other material outside the
pleadings to their motion, the motion must be treated as one for summary
judgment under Rule 56. See FED. R. CIV. P. 12(d).  Both sides were given
ample opportunity at the evidentiary hearing on March 10, 2009 and
thereafter during the briefing on plaintiff's motion to transfer to
submit all material pertinent to both motions.

[2] Dr. Fronton argues that he last treated Gibbons on October 3, 2003.
However, whether Dr. Fronton had any role in the alleged continuing
failure of Sterling Medical Corporation to diagnose Gibbons' cancer is a
disputed factual issue.  Neither side has submitted conclusive evidence
on the date of last treatment by Dr. Fronton.

malpractice and lack of informed consent claims against Sterling Medical Corporation ran on February 5, 2007, and the Florida statute of limitations ran on March 11, 2007. Under New York's choice of law rule, the shorter statute of limitations governs Gibbons' claims.

Therefore, the New York statute of limitations for Gibbons' malpractice and lack of informed consent claims expired on February 5, 2007, and had already run when Gibbons filed his claims on February 16, 2007.[3] Gibbons' medical facility negligence claim was timely as the statute of limitations for that claim is three years under both New York and Florida law.

Gibbons seeks to transfer his claims to the Southern District of Florida under 28 U.S.C. § 1406(a), arguing that under Florida choice of law rules, the Florida district court would apply Florida's longer statutes of limitations. Without reaching the question, which is for the Florida court to decide, it appears that Gibbons is correct.  See Merkle v. Robinson, 737 So.2d 540 (Fla. 1999); Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980); Fl. Stat. § 95.11(4)(b).

---

[3] Neither party has addressed whether the statute of limitations on plaintiff's claims against Dr. Fronton should be calculated differently, and may have run earlier, than the limitations on plaintiff's claims against Sterling Medical Corporation.

**II. Section 1406(a) Allows a Case Brought in the Wrong District to be Transferred to a District Where the Action Could Have Been Brought Initially**

Although a court may dismiss a case that is brought in an improper forum, 28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In accordance with the language of the statute, an action may be transferred only to a district where it might have been brought initially. 28 U.S.C. § 1406(a). Venue must be proper and the defendants must be subject to personal jurisdiction in the transferee forum. Volkswagen de Mexico, S.A. v. Germanischer Lloyd, 768 F. Supp. 1023, 1029 (S.D.N.Y. 1991)(citing Alexander & Alexander v. Donald F. Muldoon & Co., 685 F. Supp. 346, 349 (S.D.N.Y. 1988)). The party seeking transfer bears the burden of establishing personal jurisdiction over the defendants in the transferee forum. Alexander & Alexander, 685 F. Supp. at 350.

**III. Section 1406(a) Has Been Interpreted Broadly to Allow Transfer When Technical Mistakes Would Otherwise Impede Adjudication on the Merits.**

Despite the fact that § 1406 explicitly mentions only incorrect venue, it has been read much more expansively, starting with the Supreme Court's decision in <u>Goldlawr v. Heiman</u>.  369 U.S. 463 (1962).  In <u>Goldlawr</u>, the Supreme Court held that a district court may transfer, rather than dismiss, an action in which it has no personal jurisdiction over the defendants. <u>Id</u>. at 465.  The Court stated that "[n]othing in [§ 1406] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants."  <u>Id</u>.  Rather, § 1406 had been enacted for the purpose of "avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn."  <u>Id</u>. at 466.

In accordance with the <u>Goldlawr</u> decision, the Second Circuit has held that § 1406(a) is "broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendants or not." <u>Corke v. Sameiet M.S. Song of</u>

Norway, 572 F.2d 77, 79 (2d Cir. 1978)(citing Goldlawr, 369
U.S. at 466).  In Corke, the Second Circuit reversed the
decision of the district court, which had held that it
lacked jurisdiction over defendants and had no power to
transfer the case under § 1406(a).  In its decision, the
Second Circuit suggested that the meaning of "wrong," as
used in § 1406(a), is broad.  Quoting from the Fifth
Circuit, the court stated that "a district is 'wrong' within
the meaning of § 1406(a) whenever there exists an 'obstacle
to … expeditious and orderly adjudication of cases and
controversies on their merits.'"  Corke, 572 F.2d at 79
(citing Dubin v. United States, 380 F.2d 813, 815 (5th Cir.
1967)).  The focus of a § 1406(a) inquiry is, therefore,
"whether transfer of this case is in the interest of
justice."  Corke, 572 F.2d at 80.  Balancing the prejudice
to appellants, who, without the transfer would be barred by
the statute of limitations from instituting new actions,
with that to the appellees, who would not be prejudiced, the
Second Circuit determined that a transfer was "clearly
warranted by the facts at hand" and remanded to the district
court with directions to transfer the action.  Id. at 81.

**IV. Courts Have Allowed Plaintiffs Who Missed the Statute of
Limitations to Transfer to a Forum with a Longer Limitations
Period**

The Fourth Circuit has interpreted the court's broad power under § 1406(a) to include the power to transfer, rather than dismiss, a case where a statute of limitations prevents the court from hearing the merits of the case.  In Porter v. Groat, plaintiffs brought a medical malpractice action in Virginia, where venue was proper, but where the statute of limitations had already run. 840 F.2d 255, 258 (4th Cir. 1988).  Although plaintiffs moved to transfer the case to North Carolina, the district court dismissed the case based on the statute of limitations.  Id. at 256.  The Fourth Circuit reversed, allowing the plaintiffs to transfer the case to North Carolina, where, based on the initial filing in Virginia, the suit would not be time-barred by the applicable North Carolina statute of limitations.  Id. at 253.  In making this determination, the court reasoned that it would be "in the interest of justice" for plaintiffs to have their suit adjudicated on the merits.  Id.

Similarly, in Gray v. Pepsi-Cola Metropolitan Bottling Company, Judge Conner of this court permitted a transfer under § 1406(a) based on a statute of limitations bar.  1980 U.S. Dist. LEXIS 13290 (S.D.N.Y. Aug. 25, 1980).  In Gray, the plaintiff filed an action in New York, but later moved to transfer to New Jersey, where the statute of limitations was longer.  Id. at *6.  Acknowledging that the Second Circuit applies a "judicial gloss" to the interpretation of § 1406(a), the court reasoned that transfer would be appropriate in order to avoid the prejudice that would result from dismissal, which would deprive the plaintiff of an opportunity to have his case heard on its merits.  Id.

## V. The Second Circuit Has Limited Transfers Under § 1406(a) to Those Cases in Which Transfer Is in the Interest of Justice

Although § 1406(a) has been interpreted broadly, the Second Circuit has held that transfer should not be granted where it "would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice." Spar, Inc. v. Information Resources, Inc., 956 F.2d 392, 394—95 (2d Cir. 1992).  In Spar, plaintiff sought to transfer a time-barred action to another jurisdiction with a longer statute of limitations. The Second Circuit affirmed the district court's denial of the transfer, stating that "[a]lthough we do not dispute

that § 1406 should be read broadly in many circumstances, we cannot accept …that in all cases in which there is a procedural bar to suit in the transferor district, the action should be transferred."  Instead, "a district court should consider whether a transfer would be in the interest of justice."  Spar, 956 F.2d at 394.

The Second Circuit went on to hold that a transfer would not be in the interest of justice in Spar's case because it "would reward plaintiffs for their lack of diligence in choosing a proper forum." Id.  In support of this holding, the court explained that the purpose of § 1406 was to avoid the type of injustice which results from the dismissal of actions merely because plaintiff "made an erroneous guess with regard to the existence of some elusive fact." Id. (quoting Goldlawr, 369 U.S. at 466).  However, the court found that Spar had not made an erroneous guess. Rather, "Spar had ample opportunity to bring this action within the limitations period" because "[t]he facts and circumstances underlying [plaintiff's] claim were plainly evident within New York's prescribed time frame."  Id. at 395.  In fact, Spar had initiated a related action, based on the same facts, several years earlier and within the statute of limitations against a different defendant.  Id.  Thus it was clear that "Spar could easily have filed its claim . . .

16

before New York's three-year limitations period had run."
Id.  Because plaintiff had simply failed to pursue his
claims, the Second Circuit held that it would not be in the
interest of justice to transfer the case. Id.

## VI. Transferring Gibbons' Case Is In the Interest of Justice

Following the Second Circuit's decisions in Spar and
Corke, the main question presented by Gibbons' motion to
transfer under § 1406 is whether such a transfer would be
"in the interest of justice." As these cases explain, this
depends upon whether the plaintiff has been diligent in
pursuing his claim, whether the opposing party would be
unduly prejudiced by the transfer, and whether plaintiff's
reason for bringing the case in the wrong forum is analogous
to an "erroneous guess" about an "elusive fact" which
prevents the "expeditious and orderly adjudication" of the
case on the merits.  Goldlawr, 369 U.S. at 466; Corke, 572
F.2d at 79 (citing Dubin, 380 F.2d at 815).

Although defendants argue that Gibbons' motion is
foreclosed by Spar, the facts of Spar are not similar to the
facts of this case.  Importantly, Spar did not make an
erroneous guess.  Rather, Spar consciously chose not to
assert his claims during the statutory period and instead
sued on related causes of action.  Spar, 956 F.2d at 395.
Unlike Spar, Gibbons did not sit on his rights for five

years while simultaneously suing on related causes of
action.  In contrast, Gibbons filed his claims in a timely
fashion, but in the wrong forum.  Gibbons filed a timely
administrative proceeding under the FTCA within the statute
of limitations, making an "erroneous guess" that defendants
were federal employees.  Thus the facts of Gibbons' case are
patently different from those of <u>Spar</u> and the equities weigh
in Gibbons' favor.

   Moreover, because defendants reside in Florida, they
would not be prejudiced by transferring the case there. In
contrast, failure to transfer Gibbons' claims is likely to
result in preventing an "expeditious and orderly
adjudication . . . on the merits" because Gibbons has missed
the New York statute of limitations.

   Furthermore, had Gibbons made the reverse mistake, by
assuming that defendants were not government employees when
in fact they were, and timely filed his claim in state court
but failed to exhaust his administrative remedies within the
prescribed time period, federal law would toll the statute
of limitations based on his timely initial filing in the
wrong forum.  28 U.S.C. § 2679(d)(5); <u>Kelley v. United
States</u>, 568 F.2d 259, 265—68 (2d Cir. 1978).  Finding it
"unfair" to apply an administrative-exhaustion requirement
to a plaintiff who brought suit in state court

reasonably thinking it to be the proper venue, the Second Circuit has held the administrative exhaustion requirement does not necessarily apply in such situations. <u>Kelley</u>, 568 F.2d at 265–68.[4]   A similar problem arises when the federal statute of limitations is shorter than the state statute, and a plaintiff (reasonably thinking that the defendant is a private individual) brings suit within the state statute of limitations period, but outside of the federal period.  Here again, the Second Circuit has stated that this situation "may well require equitable tolling." <u>Celestine v. Mount Vernon Neighborhood Health Ctr.</u>, 403 F.3d 76, 84 (2d Cir. 2005).  Because Gibbons made the reverse mistake, his case does not qualify for this type of equitable tolling. However, the reasoning of these cases suggests that it is "in the interest of justice" to allow Gibbons the benefit of his administrative filing date.

Defendants also argue that this court lacks personal jurisdiction over them and that this should weigh against transferring the case.  However, the Supreme Court has made clear that "[n]othing in [§ 1406] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal

---

[4] <u>Kelley</u> has now been superseded by 28 U.S.C. § 2679(d)(5) which provides a similar remedy by allowing a mistaken plaintiff the benefit of his state filing date so long as he exhausts his administrative remedies within 60 days of dismissal of the state action.

jurisdiction over the defendants."[5]  Goldlawr, 369 U.S. at
465.  Rather, in order to obtain a transfer, the moving
party must establish that there is personal jurisdiction
over defendants in the transferee court and that venue is
proper there. Volkswagen de Mexico, S.A., 768 F. Supp. at
1029.  In this case, there is no question as to personal
jurisdiction or venue because defendants admit that they
reside in the Southern District of Florida and that all
allegations of the complaint occurred there.

Therefore, I follow the persuasive reasoning of my
late, distinguished colleague Judge Conner and find that it
is in the interest of justice to transfer Gibbons' case to
the Southern District of Florida.  As explained above,
transferring the case does not prejudice the defendants, but
failing to transfer it would deprive Gibbons of an
opportunity to litigate his complaint on the merits.  Thus,
because Gibbons filed a timely claim within the statute of
limitations, albeit in the wrong forum, it is in the
interest of justice to transfer his claims under 28 U.S.C. §
1406(a).[6]

---

[5] Moreover, by litigating in the Southern District of New York for over
two years, defendants are likely to have waived any objections to
personal jurisdiction they may have had.
[6] As discussed supra in section I, it appears that, based on the filing
of his complaint in federal court, Gibbons claims would be considered
timely under Florida law.  However, that is an issue for the Florida
district court to decide.

**VII. Defendants' Motion to Dismiss Is Moot**

Defendants move to dismiss on the ground that Gibbons failed to meet the statute of limitations in New York. Defendants argue that New York's choice of law rules apply and that New York's shorter statute of limitations governs Gibbons' claims. However, because the case is being transferred to Florida, the Florida district court must decide the choice of law issue. Therefore, defendants' motion to dismiss on the ground that Gibbons' claims are barred by the New York statute of limitations is moot.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to transfer to the Southern District of Florida is granted. Defendants' motion to dismiss is denied as moot.

SO ORDERED.

Dated:     New York, New York
           September 24, 2009

                                S/_____
                                  MIRIAM GOLDMAN CEDARBAUM
                                United States District Judge